[Crim. No. 22852. Aug. 1, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK MOORE, Defendant and Appellant.

216

COUNSEL

Rosana M. Selesnick, under appointment by the Supreme Court, for Defendant and Appellant.

George Deukmejian, and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROUSSARD, J.**—This appeal presents the question whether a probation department has a duty to preserve and disclose a urine sample when that

sample is used as the basis for revocation of probation. We hold that the department, having requested a revocation hearing based on the test results of a urine sample, has a duty to preserve and disclose the sample even in the absence of a request therefor.

On July 1, 1977, defendant Frank Moore was charged by information with five counts of selling controlled substances in violation of Health and Safety Code section 11379, subdivision (a). In an information filed December 7, 1977, defendant was alleged to have unlawfully possessed phencyclidine (PCP), in violation of Health and Safety Code section 11377, subdivision (a).

Defendant pled guilty to violation of Health and Safety Code section 11377, subdivision (a) and was granted probation for 3 years on certain conditions, including that he spend the first 150 days in county jail. Defendant also pled guilty to count I of the information alleging violation of Health and Safety Code section 11379, subdivision (a); probation was granted and the sentence was ordered to run concurrently with that imposed in the other case.

In 1979, after a urine sample tested positive for PCP, an evidentiary hearing was held. Defendant was found to be in violation of probation. He was sentenced to a three-year suspended sentence, the probationary period was extended two years, and defendant was ordered to submit to regular narcotic testing.

On January 13, 1981, following several tests showing the presence of PCP in defendant's urine, the violation was held in abeyance and defendant was admonished that any more "dirty tests" would result in imposition of a state prison sentence.

On January 20, 1981, at the direction and in the presence of his probation officer, defendant supplied a urine sample which was sent to the Los Angeles County laboratory for analysis. Three tests were performed, all indicating the presence of PCP. When the results of the chemical analysis were received by the probation department, defendant's probation officer requested a hearing date for revocation of probation.

On April 2, 1981, defendant denied violating the terms of probation, his motion to substitute counsel was granted, and the matter was continued until May 4, 1981. On that date the People moved for a continuance, and defendant's new counsel requested inspection of the urine sample. By the time of defendant's request, however, the urine sample had been discarded.

At the hearing on probation revocation, the chief toxicologist of the Los Angeles County Laboratory testified that the probation department and the laboratory had an agreement that positive samples were to be retained by the laboratory for three months unless the probation department requested retention of particular samples for a longer period. The toxicologist also testified that defendant's urine sample taken on January 20, 1981, had tested positive for PCP. He further testified that if the sample were available at the time of the hearing, a test for PCP would reconfirm the earlier results. However, he also testified that the usefulness of retests of the sample would depend upon "who does the work. There's a lot of incompetence in this work."

Defendant's probation officer testified that he requested a hearing on revocation of probation upon reviewing the results of the test performed on defendant's urine sample of January 20, 1981. The probation officer also stated that he did not request that the sample be retained by the laboratory.

At the conclusion of the hearing, defense counsel argued in essence that the failure of the prosecution to preserve the urine sample denied the defendant the opportunity to independently examine the sample, and therefore deprived defendant of a fair revocation hearing. The trial court found the procedures for retention of positive samples to be reasonable, and further found defendant to be in violation of the terms and conditions of probation.

The rule we set forth in this case is not new; it merely follows from application of previously established principles regarding the duty of the government to preserve and disclose evidence material to the issue of the guilt or innocence of the defendant. That duty was enunciated in *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].

In *Hitch* the defendant was arrested for driving a motor vehicle while under the influence of intoxicating liquor. The defendant submitted to a breathalyzer test by breathing into a machine that trapped his breath in a glass ampoule. The presence of alcohol could be detected by comparing the sample ampoule to a reference ampoule. The officer tested defendant's breath and concluded that alcohol was present. The officer then poured the contents of the test ampoule into a bottle and discarded the ampoule itself. The bottle was delivered to a county laboratory, which eventually disposed of its contents.

Defendant moved to suppress the results of the breathalyzer test, claiming that destruction of the test ampoule and its contents deprived him of due process of law. This court held that an investigative agency has a duty to preserve and disclose evidence material to the guilt or innocence of the

accused (*People* v. *Hitch, supra,* 12 Cal.3d at p. 652) and that the duty arises even in the absence of a request from the defendant. (*Id.,* at p. 650; see also *People* v. *Nation* (1980) 26 Cal.3d 169, 175 [161 Cal.Rptr. 299, 604 P.2d 1051].)

*Hitch* relied on the reasoning of *United States* v. *Bryant* (D.C.Cir. 1971) 439 F.2d 642, which explained that "before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation." (*Id.,* at p. 651.) *Bryant* involved the government's loss of tape recordings of conversations between defendants and government agents which were crucial to the issue of defendant's participation in a narcotics transaction. In concluding that the government had a duty to show that it had used "rigorous and systematic procedures designed to preserve *all* discoverable evidence gathered in the course of a criminal investigation" (*id.,* at p. 652, fn. omitted), the court underscored that "[t]he purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government." (*Id.,* at p. 648, fn. omitted.)

Other federal courts have suggested that the government's failure to preserve discoverable evidence amounts to a denial of due process: "Loss or destruction of relevant evidence by the government not only raises general questions of the fundamental fairness of a criminal trial, but may also deny a defendant the right to compulsory process." (*Government of Virgin Islands* v. *Testamark* (3d Cir. 1978) 570 F.2d 1162, 1166.)

That the government has an obligation to preserve and disclose material evidence is thus clear. The question becomes whether the urine sample in this case constituted such material evidence.

When the evidence is no longer in existence, the burden of establishing that the evidence is material is met when the defendant shows that there is "a reasonable possibility that the evidence, if preserved, would have constituted favorable evidence on the issue of guilt or innocence. (*People* v. *Hitch, supra,* 12 Cal.3d at p. 649.)" (*People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1001 [186 Cal.Rptr. 676].) This burden is met when the evidence by its nature could reasonably be used to impeach the credibility of the prosecution witness' testimony regarding the evidence. In this respect, the urine sample in this case is quite analogous to the ampoule in

*Hitch.* ▮▮▮ As the conclusions regarding the test ampoule would have been subject to impeachment, so too there exists a reasonable possibility that independent testing of the urine sample in this case could yield results that would undermine the prosecution's case. This conclusion is bolstered by the testimony of the chief toxicologist, who claimed that "[t]here's a lot of incompetence in this work." The clear implication of that testimony is that test results could differ depending upon who performed the analysis.

For purposes of materiality, the evidence in this case is also similar to a semen sample obtained from the vagina of a rape victim, which has been found to be necessarily material evidence requiring preservation. (*People v. Nation, supra,* 26 Cal.3d 169; *People* v. *Newsome, supra,* 136 Cal.App.3d 992, 1001.)

Because the evidence in question is no longer available, it is impossible for this or any court to determine whether in fact the urine sample would have been favorable evidence to the defendant. However, it is the government's loss of evidence that requires speculative inquiry as to its materiality. Of course, when the evidence is available but has been suppressed by the prosecution, the court is in a better position to determine whether the suppressed evidence is substantially material. This court specifically distinguished such situations in *Hitch.* Referring to *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], *Giglio* v. *United States* (1971) 405 U.S. 150 [2 L.Ed.2d 321, 78 S.Ct. 311], and *In re Ferguson* (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234], we stated that in those cases the suppressed evidence was neither lost nor destroyed, therefore "the court was in a position to examine the suppressed evidence, decide whether or not it was favorable to the accused and ultimately to determine whether or not it was material . . . ." (*People* v. *Hitch, supra,* 12 Cal.3d at p. 647.)

In this case, the loss of the evidence necessarily means that the defendant will be unable to make a showing of materiality beyond claiming that he did not ingest PCP. This the defendant did by denying in open court that he violated probation.

Our attention has been drawn to *People* v. *Chambers* (1980) 108 Cal.App.3d 985 [166 Cal.Rptr. 815], in support of the proposition that defendant's failure to testify at the probation revocation hearing rendered the lost evidence immaterial. In *Chambers,* the defendants claimed that the loss of taped telephone conversations deprived them of a fair trial, and

sought dismissal therefor. The court held that because the loss of evidence was neither intentional nor in bad faith, the appropriate sanction was suppression of testimony concerning the conversations that were taped. However, before even the lesser sanction would be imposed, the court stated that the defense is required to show the substantial materiality of the lost evidence. The court found that defendants made no showing that their telephone conversations differed in any respect from the testimony regarding their content. The court thus concluded that defendant had failed to show materiality of the lost evidence. (*Id.,* at p. 990.) Without testimony controverting the contents of the claimed conversation, the court had no basis for concluding that there was a reasonable possibility that the tapes would have been helpful to the defense.

Even assuming the validity of the *Chambers* rule, the situation in this case is quite different. Here, the lost evidence constitutes the only evidence of a violation of probation. Thus, the mere denial of violation of probation implies denial of use of PCP, and therefore suffices as a showing that the lost evidence would have been material. Thus, we reject the suggestion that defendant's failure to testify at the probation revocation hearing rendered the lost evidence immaterial.

Having concluded that the lost urine sample constituted material evidence that might have been helpful to the defense, we must decide what, if any, sanctions are appropriate for the government's failure to preserve and disclose the urine sample. The dispute on this issue involves the relevant standard with which the prosecution must comply, and whether the procedure in this case meets that standard. As we shall see, however, the standard is clear, and the prosecution has failed to meet it in this case.

The sanctions to be imposed in any case depend upon the particular circumstances attendant to the loss or destruction of the material evidence. (*People* v. *Hitch, supra,* 12 Cal.3d 641, 650.) "If the prosecution meets its burden and makes the required showing, then the *results* of the breathalyzer test shall be admissible in evidence, even though the ampoules and their contents have been lost. If the prosecution fails to meet its burden then the court shall apply sanctions for nondisclosure. Finally, we hold that in such latter event due process shall not require a dismissal of the action but shall require merely that the *results* of the breathalyzer test be excluded from evidence." (*People* v. *Hitch, supra,* 12 Cal.3d at p. 653, fns. omitted, original italics.) We also suggested that the bad faith destruction of material evidence may well require dismissal as the appropriate sanction. (*Id.,* at p. 653, fn. 7.)

The People contend that the prosecution need only employ reasonable methods to preserve evidence, citing *People* v. *Nation, supra,* 26 Cal.3d at page 175. Further, the People argue that the system of retaining samples for 90 days was a reasonable procedure, so that the prosecution's duty has been properly discharged.

There is language in *People* v. *Nation, supra,* 26 Cal.3d at page 175 that refers to the duty of law enforcement agencies to take "reasonable measures" to ensure the adequate preservation of material evidence. That portion of *Nation*, however, was referring to the discussion in *Hitch* which analogized the duty to preserve material evidence to the prosecutor's duty to undertake reasonable efforts to obtain information by which the defense may locate an informer who is a material witness on the issue of guilt. It was in this context that *Hitch* stated that "the prosecution has a duty to undertake reasonable efforts to preserve the material evidence, to wit the testimony of the material informant." (*People* v. *Hitch, supra,* 12 Cal.3d at p. 650.) ■ But, in describing what efforts the prosecution must make to preserve the evidence, we specified that sanctions were to be imposed for the intentional but nonmalicious destruction of material evidence "unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to *rigorous and systematic procedures* designed to preserve . . ." the evidence. (At pp. 652-653, italics added; see also *People* v. *Goss* (1980) 109 Cal.App.3d 443, 455 [167 Cal.Rptr. 224].) Failure to meet this burden requires that the results of the test be excluded from evidence.

■ The procedure used in this case fails to meet the required standard. The county preserved positive samples for 90 days, or longer if a request was made for a particular sample. However, there was no showing that such requests were regularly made when revocation hearings were scheduled. Thus, the government has failed to show that it has reasonably attempted to preserve samples until the hearings for which they have been taken. Without a showing that requests to retain samples are routinely made and honored, the preservation of a particular sample depends upon the fortuitous circumstance whether the hearing has been held within 90 days. Such a system fails to be a reasonable measure designed to ensure the preservation of material evidence, because it fails to employ rigorous and systematic procedures designed to preserve material evidence for the hearing in which its results are introduced.

We therefore hold that the urine sample in this case was material evidence giving rise to a duty to preserve and disclose the sample. The government has failed to show that rigorous and systematic procedures were taken to preserve the sample. Therefore, evidence regarding results of tests of the

urine sample must be excluded. Because results of the test constitute the only evidence regarding defendant's violation of probation, the judgment revoking defendant's probation is reversed.

Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.

Richardson, J., concurred in the judgment.