[No. A029309. First Dist., Div. One. Apr. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD EUGENE WILSON, Defendant and Appellant.

**COUNSEL**

Ronald W. Rose, Mark A. Arnold, Carleen R. Arlidge, John M. Wadsworth and Rose & Arnold for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Granucci and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEWSOM, J.**—Appellant was charged with cultivation of marijuana (Health & Saf. Code, § 11358)[1] and possession of marijuana for sale (§ 11359). He subsequently filed motions to dismiss the information (Pen. Code, § 995) and suppress evidence (Pen. Code, § 1538.5) on grounds that

---

[1]All further references are to the Health and Safety Code unless otherwise indicated.

material xculpatory evidence was destroyed in contravention of his due process rights and that a search warrant was issued without probable cause. The motions were heard and denied by the trial court, whereupon the case was assigned for trial.

Pursuant to stipulation, the case was tried upon the transcript of the preliminary examination, which, as pertinent to this appeal, contained the following evidence.

On September 12, 1983, Detective Jack Bliss of the Santa Clara Police Department received a tip from an anonymous informant that marijuana plants were being grown in the backyard at 2205 San Antonio Place in the City of Santa Clara. On the same day, at approximately 12:30 p.m., Officer Bliss went to that location to inspect the premises. The officer was unable to observe marijuana from the front of the residence, so he walked along the sidewalk of a "parallel street" to view the backyard from behind.

From this vantage he observed the "tops of marijuana plants growing over the fence." The back fence consisted of a six-foot wooden structure elevated with "a two foot green plastic extension. . . ." The marijuana plants were protruding "half a foot above the fence line." Although Officer Bliss was "about twenty yards" away on the public sidewalk with a "house and full yard" between himself and the plants, he had "no doubt" that he was viewing marijuana given the distinctive color and shape of the foliage.

After Bliss returned to the residence to confirm "that the plants were still there," he prepared an affidavit and obtained a warrant to search the premises at 2205 San Antonio Place. The search was conducted that evening, and resulted in the seizure of the following evidence: approximately fifty-two marijuana plants growing in the backyard, ranging in height from four to nine feet; dried and processed marijuana in "six 16-pound bags and then another brown grocery bag containing . . . eighty grams," in addition to a garbage bag which was half-filled, all found in the house; a briefcase retrieved from the dining room in which was discovered a Bank of the West passbook and documents listing names and amounts, as well as the two strains of marijuana being grown; and an Ohaus scale.

At the scene, the police officers took photographs of the marijuana seized from the yard and residence. Officer Bliss then "pulled up" the growing plants, which, together with the bags of marijuana were "all piled into a truck in one massive pile" and transported to the police station for booking into evidence.

At the station, the marijuana was separated into four bundles approximately "two to three feet in diameter." As directed by his supervisor, Bliss

obtained a court order for destruction of the marijuana. Before the marijuana was destroyed, however, the officer preserved samples of the evidence. In all, he gathered ten pounds of marijuana into five bags. The officer selected five random samples from the total amount seized, plucking leaves directly off the plants uprooted from the backyard to fill two of the bags. He simply "grabbed a handful off the top" of the four bushels of plants to comprise the samples of growing marijuana. The remaining samples came from the dried marijuana, selected without method or deliberation by the officer from three of the six 16-pound bags seized from inside the house. Bliss did not notice a difference in quality or type among the 16-pound bags, and so did not discriminate in obtaining samples.

Before the marijuana was destroyed, its gross weight was determined to be 272 pounds. Photographs were taken of the growing plants and bags of dried marijuana found inside the house. Some of the photographs plainly depict the tops of plants extending above the fenceline.

Appellant contends that his statutory and due process rights were violated by the procedures employed to destroy the marijuana seized from his residence. He complains that the failure of law enforcement officials to preserve an *entire plant* dictates suppression of all of the seized contraband.

In *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], the high court of this state first announced the rule that the federal guarantee of due process imposes upon an investigative agency the obligation to preserve and disclose evidence material to the guilt or innocence of the accused. (See also *People* v. *Moore* (1983) 34 Cal.3d 215, 219-220 [193 Cal.Rptr. 404, 666 P.2d 419].) The burden of establishing materiality of the evidence is met upon a showing by the defendant of a reasonable possibility that the evidence, if preserved, would have constituted favorable evidence on the issue of guilt or innocence. (*In re Michael L.* (1985) 39 Cal.3d 81, 86 [216 Cal.Rptr. 140, 702 P.2d 222]; *People* v. *Hitch, supra,* 12 Cal.3d at p. 649; *People* v. *Moore, supra,* 34 Cal.3d at p. 220.)

Section 11479 has been characterized as a "specific exception" to the *Hitch* requirements. (*People* v. *Tolhurst* (1982) 139 Cal.App.3d 1, 6 [188 Cal.Rptr. 474].) At the time the destruction of the marijuana occurred, section 11479 provided, as pertinent here, "that [an] amount in excess of 10 pounds in gross weight [of a suspected controlled substance] may be destroyed without a court order by the chief of the law enforcement agency or a designated subordinate" upon a showing that the following requirements have been satisfied: "(a) At least five random and representative samples have been taken, for evidentiary purposes, from the total amount of suspected controlled substances to be destroyed. [¶] (b) Photographs have been taken

which reasonably demonstrate the total amount of the suspected controlled substance sampled and to be destroyed. [¶] (c) The gross weight of the suspected controlled substance has been determined, either by actually weighing the suspected controlled substance or by estimating such weight after dimensional measurement of the total suspected controlled substance. *When the suspected controlled substance consists of growing or harvested plants, only a representative sample need to be retained for evidentiary purposes.*[2] (Italics added.) We consider section 11479 not an exception to *Hitch,* but a legislative statement of the manner in which *Hitch* may be satisfied where a controlled substance has been seized.[3]

 Appellant does not present a constitutional challenge to the statute. His claim is that law enforcement officials did not comply with the statutory and due process directives of section 11479 in the destruction procedure. Specifically, he submits that "only strict compliance with the provisions of . . . section 11479 will suffice" to protect and preserve a defendant's due process rights.

 Statutory requirements are mandatory, rather than directory, and exact strict compliance when such an intent is expressed or implicit in the statute. (*Edwards* v. *Steele* (1979) 25 Cal.3d 406, 409-410 [158 Cal.Rptr. 662, 599 P.2d 1365].) There is no simple, mechanical test for determining whether a provision should be given "directory" or "mandatory" effect; as in all cases of statutory interpretation, the court must ascertain the legislative intent. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 909-910 [136 Cal.Rptr. 251, 559 P.2d 606].) " 'In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . .' " (*Id.* at p. 910; quoting from *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].)

---

[2]Subdivision (a) of section 11479 currently requires that: "At least five random and representative samples have been taken, for evidentiary purposes, from the total amount of suspected controlled substances to be destroyed. These samples shall be in addition to the 10 pounds required above. When the suspected controlled substance consists of growing or harvested marijuana plants, at least one 10 pound sample (which may include stalks, branches, or leaves) and five representative samples consisting of leaves or buds shall be retained for evidentiary purposes from the total amount of suspected controlled substances to be destroyed." Subdivision (c) now simply reads: "Photographs have been taken which reasonably demonstrate the total amount of the suspected controlled substance or container of the suspected hazardous chemical sampled and to be destroyed."

[3]Since due process is the basis for the *Hitch* requirement of evidence preservation, the Legislature cannot create a statutory *exception* to that federal constitutional right.

■ Section 11479 is mandatory in its terms; it specifies that destruction of evidence "shall not take place" unless specified requirements are satisfied. In order to adequately effectuate the protection of a suspect's due process rights, it is imperative that statutes relating to destruction of material evidence be strictly construed; section 11479 requires preservation of random and representative samples, together with photographs and measurements of the controlled substance. Such requirements temper the prejudicial effects of destruction, and insure that the suspect's due process rights are not impermissibly compromised.

In *Hitch,* the court observed that "the prosecution has a duty to undertake reasonable efforts to preserve the material evidence . . . ." (*People* v. *Hitch, supra,* 12 Cal.3d 641, 650.) ■ Sanctions are imposed for the intentional but nonmalicious destruction of material evidence "unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the [evidence] . . . ." (*Id.* at pp. 652-653; see also *People* v. *Moore, supra,* 34 Cal.3d 215, 223; *Fowler* v. *Superior Court* (1984) 162 Cal.App.3d 215, 219 [208 Cal.Rptr. 408].) Failure to meet this burden results in exclusion of the evidence destroyed. (*People* v. *Moore, supra,* 34 Cal.3d at p. 223.)

■ Since section 11479 is essentially a legislative declaration of the required "rigorous and systematic procedure" designed to preserve evidence of a controlled substance, nothing less than strict compliance with its provisions will satisfy the dictates of due process. (*People* v. *O'Hearn* (1983) 142 Cal.App.3d 566, 571 [191 Cal.Rptr. 481].) Was there such compliance here?

■ ■ The duty to preserve evidence arises only upon a showing of "constitutional materiality"; and our nation's high court has declared that to meet this standard, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta* (1984) 467 U.S. 479, 489 [81 L.Ed. 2d 413, 422, 104 S.Ct. 2528, 2534; see also *In re Michael L., supra,* 39 Cal.3d 81, 86.) The "representative sample" requirement of section 11479 must, in turn, be measured in every case by reference to this test.

We can fashion no categorical definition of the phrase "representative sample." Whether the evidence seized is sufficient to satisfy the minimal test of due process and the statutory standard is answerable on a case-by-case basis. The precise form of the retained sample of the controlled substance

is in itself unimportant, provided it adequately represents the evidence seized.[4]

In the case before us, appellant complains that the prosecution's failure to retain an entire growing plant has compromised his ability to demonstrate the unlawfulness of the search warrant. Officer Bliss testified that he was able to view the tops of the plants from the public sidewalk. Appellant insists that the plants were invisible from the officer's lawful vantage point; only preservation of an entire plant would thus have resolved this, he argues. The destruction of all but the leaves of the plants prevented him from impugning the officer's credibility.

Given the rather sophisticated nature of appellant's defense, whether the evidence possessed an "exculpatory nature that was apparent before the evidence was destroyed" is open to considerable question.[5] On the basis of the entire record before us, we conclude that omission of an entire plant from the retained evidence did not deprive appellant of either a "representative sample" or due process. In so concluding we attach considerable weight to the police photographs[6] which clearly depict the height of the plants in relation to the fenceline. These photographs constitute "comparable evidence" providing appellant the means of corroborating his defense, although in our view they fail to do so. The preservation of the plant leaves together with these photographs satisfies both due process and the "representative sample" requirement of section 11479.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

---

[4]Subdivision (a) currently provides in pertinent part as follows: "When the suspected controlled substance consists of growing or harvested marijuana plants, at least one 10 pound sample (which may include stalks, branches, or leaves) and five representative samples consisting of leaves or buds shall be retained for evidentiary purposes from the total amount of suspected controlled substances to be destroyed." Preservation of leaves or buds, as mandated by subdivison (a), may suffice to meet the statutory standard; due process *may*, in some cases, require more.

[5]We do not intend to require the police to anticipate all criminal defenses, particularly those that are less than obvious. On the other hand, before evidence is destroyed forever, law enforcement officials must not be blind to foreseeable potential defenses.

[6]In accordance with then subdivision (b) of section 11479.