Filed 6/28/13; pub. order 7/25/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROSCOE LITTLEFIELD et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>        Defendant and Respondent. | A135628<br><br>(Humboldt County<br>Super. Ct. No. DR090888) |

Sheriff's deputies seized and destroyed approximately 1,500 pounds of marijuana under cultivation in a remote area of Humboldt County (the County). Plaintiffs Roscoe, Sylvia, Richard, Timothy and Jeffery Littlefield, each of whom has a written physician's recommendation for up to two ounces of marijuana per day, sued the County for conversion and violation of their constitutional and statutory rights to be free from unreasonable search and seizure and deprivation of property without due process. On cross-motions for summary judgment, the trial court found the deputies had probable cause for the seizure, that the County lawfully destroyed the cannabis, and that plaintiffs failed to proffer admissible evidence that their possession was lawful. It accordingly granted the County's motion and denied plaintiffs' motion. We agree, and affirm.

## BACKGROUND

The facts are largely undisputed. Humboldt County Sheriff's deputies, assisted by CAMP (Campaign Against Marijuana Planting) agents, conducted open field marijuana eradication operations in a remote area of Humboldt County. Following aerial surveillance, deputies and CAMP agents entered a garden that contained 118 marijuana

1

plants ranging from three to eight feet tall with an average diameter of six to seven feet. The flowering plants were heavily laden with buds. A loaded rifle with an attached 50 round "banana clip" was found in a small tent inside the garden.

Four medical marijuana recommendations written by Dr. Norman Bensky, for Sylvia Littlefield, Timothy Littlefield, Roscoe Littlefield, and Jeffrey Libertini, were posted on the front gate and inside the garden. The recommendations for Sylvia, Timothy and Roscoe Littlefield indicated the use of up to two ounces of cannabis per day, the equivalent of 45.6 pounds per year. The recommendation for Libertini was not issued by Dr. Bensky, and did not identify a dose or the ailment or symptoms to be treated with cannabis. Sylvia's recommendation specified it was for degenerative joint disease and glaucoma, Roscoe's specified degenerative joint disease and low back pain, and Timothy's specified low back pain and anxiety.

A well-worn footpath led from the site to a second plot on the Littlefield property, where deputies located an additional 96 flowering marijuana plants from three to eight feet tall and averaging four to six feet wide. Medical marijuana recommendations for Richard Littlefield and Summer Brown, each of which indicated up to two ounces daily for degenerative joint disease and low back pain, were posted in this garden. Deputies observed a number of other marijuana plots on the Littlefield property, but left them undisturbed.

Timothy Littlefield arrived during the search and told Deputy Fulton that the medical recommendations allowed each of the posted users to possess 45.6 pounds of marijuana per year. Deputy Fulton provided this information by radio to Sergeant Wayne Hanson, who responded that he believed the recommendations were invalid and the marijuana should be seized.

Hanson determined that the aggregated canopies of both gardens clearly exceeded the 100 square foot canopy per person limitation determined to be reasonable under County guidelines for medical marijuana prosecutions. The total canopy of the two gardens was approximately 5,862 square feet, or 977 square feet of canopy per person, nearly 10 times more than the 100 square foot canopy considered reasonable under the

2

guidelines. The combined weight of the marijuana in both fields was approximately 1,508 pounds.[1]

Officers removed a 10-pound bulk cannabis sample and five subsamples. The remaining cannabis was removed from the two plots and destroyed pursuant to Health and Safety Code section 11479.[2] Deputy Cyrus Silva executed an affidavit on information and belief that the destruction complied with section 11479. It states: "The Sheriff of Humboldt County has determined that it is not reasonably possible to preserve the marijuana in place or at another location. This determination was based on the fact that Humboldt County does not have adequate storage facilities, or sufficient personnel to guard the marijuana. In addition, recently harvested marijuana gives off great volumes of heat and may erupt into fire. [¶] On 9:30, 2008, all of the marijuana [in] excess of ten pounds was destroyed. The remaining marijuana is retained by the Humboldt County Sheriff's Office at Eureka, California."

No arrests or criminal charges resulted from the raid, but the Littlefields sued the County for damages for, among other things, the replacement value of the confiscated cannabis, physical and mental suffering, emotional distress, and medical expenses. Plaintiffs estimate its replacement value between $683,724 and $1,367,448.

Plaintiffs and the County filed cross-motions for summary judgment. Following briefing and argument, the trial court issued an 12-page ruling granting the County's motion and denying appellants'. The court identified the critical question as "whether the officers engaged in the marijuana eradication operation possessed, at the time the marijuana here was seized, 'facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused.' " The probable cause inquiry, the court observed, "must include the officer's consideration of the individual's status as a qualified medical marijuana patient." The court concluded

---

[1] This is approximately 24,128 ounces per person, or enough of a supply for two ounces of cannabis daily for six people for five and one-half years.
[2] All further statutory references are to the Health and Safety Code unless otherwise indicated.

that, despite the posted medical marijuana recommendations, "[t]he amounts possessed were of such a quantity to lead a person of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. The amounts possessed were so well beyond the standards promulgated by state and local authorities to lead a reasonable person to believe that the marijuana was possessed for unlawful purposes."

The court rejected appellants' contention that the presentation of a medical marijuana recommendation immunizes a user from its seizure by law enforcement. "While plaintiffs assert that the mere presentation of a medical marijuana recommendation immunizes a qualified user from arrest, seizure or prosecution, independent of the quantity, the case law has not quite caught up with such an unequivocal assertion. The First District in *People v. Strasburg* (2007) 148 Cal.App.4th 1052 . . . states: 'the status of [a] qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes.' "

The court also rejected plaintiffs' claim that they lawfully possessed the seized cannabis. "The reasonably possessed amount must be based upon the patients' current medical needs as determined by the trier of fact," but plaintiffs had not offered the opinion of a qualified medical expert to show the amount of cannabis seized was reasonably related to their medical needs. Instead, plaintiffs had submitted testimony from Jason Browne, an expert in the areas of medical cannabis quantification, value, and reasonable usage, that the quantity of cannabis taken from the Littlefields' property was "reasonable and within the limits of the parties' medical cannabis recommendations." The court found that while Browne could testify generally about the needs of average users, he lacked the expertise to render a medical opinion as to plaintiffs' specific needs. Plaintiffs' medical marijuana recommendations were also insufficient to establish that the amount of marijuana was reasonable because they were hearsay for that purpose.

4

Therefore, the court noted, "the lack of such qualified medical testimony in a case involving such substantial quantities of marijuana leaves a gaping hole in plaintiffs' case." Plaintiffs' conversion claim failed because the seizure and destruction of the marijuana were lawful and because plaintiffs failed to produce evidence that their possession was lawful.

Based on its findings, the court found it unnecessary to address plaintiffs' additional constitutional and equitable claim, denied plaintiffs' summary judgment motion, and granted summary judgment for the County. Plaintiffs timely appealed.

## DISCUSSION

### A. Summary Judgment Standards

" 'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]. [Citation.] The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." [Citation.] [¶] 'The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. [Citation.] . . . Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action.' " (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485.)

"In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. [Citation.] The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law." (*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 703-704.) "We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] However, to defeat the

5

motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings. " (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805.)

## B. The Seizure Was Supported by Probable Cause

### 1. *The Limits of Marijuana Legalization*

Over 15 years ago in *People v. Trippet* (1997) 56 Cal.App.4th 1532, Division Two of this district declined a criminal defendant's invitation to interpret California's medical marijuana statutes "as a sort of 'open sesame' regarding the possession, transportation and sale of marijuana in this state." (*Id.* at p. 1546.) We will do the same. To explain why, we revisit the interface between the Compassionate Use Act (CUA) and Medical Marijuana Program (MMP), which together enable the use and possession of medically indicated marijuana, and laws of considerably longer standing that more generally control the seizure and destruction of contraband.

In *People v. Kelly* (2010) 47 Cal.4th 1008, 1012-1013, our Supreme Court explained: "In 1996, the California electorate approved Proposition 215 and adopted the CUA, which provides: 'Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician. [Citation.] By this and related provisions, the CUA provides an affirmative defense to *prosecution* for the crimes of possession and cultivation. [Citations.] The CUA does not grant immunity from *arrest* for those crimes, however. So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval. [Citation.] [¶] Nor does the CUA specify an amount of marijuana that a patient may possess or cultivate; it states instead that the marijuana possessed or cultivated must be for the patient's '*personal medical purposes.*' [Citation.] An early decision construed this provision of the CUA as establishing 'that the *quantity possessed* by the patient or the primary caregiver, and the

6

form and manner in which it is possessed, *should be reasonably related to the patient's current medical needs*." (*Ibid.*, fn. omitted; see also *People v. Mower* (2002) 28 Cal.4th 457, 467.)

In 2003 the Legislature enacted the MMP (§ 11362.7 et seq.) " 'to [c]larify the scope of the application of the [CUA] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers.' " (*People v. Kelly, supra,* 47 Cal.4th at p. 1014, italics omitted.) *Kelly* invalidated the MMP's restrictions on the quantity of medical marijuana that may legally be possessed as an unconstitutional legislative amendment to a voter enacted initiative, but left its collateral provisions in place. (*Id*. at pp. 1043, 1046-1049.) Therefore, as the trial court in this case observed, in the post-*Kelly* world we are once again left with the "reasonable amount" standard that controlled before the Legislature enacted the MMP. Fortunately, we are not without guidance on its meaning and application.

*People v. Trippet, supra,* 56 Cal.App.4th 1532, cited with approval in *People v. Kelly, supra,* 47 Cal.4th at p. 1043, fn. 60 and 1047, sheds some light on the topic. The court said: "[W]e are not remotely suggesting that, even with a physician's 'recommendation or approval,' a patient may possess an unlimited quantity of marijuana. The ballot arguments of the proponents . . . are simply inconsistent with the proposition that either the patient or the primary caregiver may accumulate indefinite quantities of the drug. The statute certainly does not mean, for example, that a person who claims an occasional problem with arthritis may stockpile 100 pounds of marijuana just in case it suddenly gets cold. The rule should be that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs. What precisely are the 'patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact. One (but not necessarily the only) type of evidence relevant to such a determination would be the recommending or approving physician's

7

opinion regarding the frequency and amount of dosage the patient needs." (*Trippet, supra,* at p. 1549.)

Ten years later, after *Mower* but before *Kelly, City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355, 363, 388-389 held that Garden Grove was required to return less than a third of an ounce of lawfully possessed marijuana to the user from whom it had been seized. The analysis primarily concerned the interplay of state and federal law, but the Fourth District recognized, as in *Trippet*, that the CUA does not establish a right to possess unlimited amounts of marijuana. The court distinguished its earlier ruling in *Chavez v. Superior Court* (2004) 123 Cal.App.4th 104, as follows. "In [*Chavez*], the police seized over 10 pounds of marijuana and 46 marijuana plants from the defendant, but charges against him were dismissed in the furtherance of justice because he was already serving time on another case. [Citation.] The defendant sought the return of a 'reasonable amount' of marijuana for medicinal purposes, but it was clear—based on the amount of marijuana he had—he was not a qualified user under the CUA. [Citation.] That being the case, he was not in lawful possession of the marijuana for purposes of section 11473.5, and therefore the marijuana had to be destroyed. [Citation.] In so holding, this court also noted that nothing in the CUA 'requires, or authorizes, the . . . return [of] confiscated marijuana.' [Citation.] However, even if it did, it would not have helped the defendant in *Chavez* because, given the amount of marijuana found in his possession, he was not entitled to the CUA's protections in the first place." (*Garden Grove, supra*, at pp. 387-388.) The *Garden Grove* court had no trouble distinguishing the small amount seized from the petitioner there with the unlawful (at least under the post-MMP, pre-*Kelly* scheme) quantity seized in *Chavez.*

## 2. *Application*

Here, the trial court distilled from these cases "[t]he principle . . . that while a reasonable amount is a flexible standard based upon the individual user, it is not without reasonable limits that include consideration of quantity." We agree. "[T]he status of qualified patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on

all of the surrounding facts including qualified patient status, when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes." (*People v. Strasburg, supra,* 148 Cal.App.4th at p. 1058; see *Giannis v. City and County of San Francisco* (1978) 78 Cal.App.3d 219, 225 [probable cause is properly decided on summary judgment].)

The most salient fact here is the vast quantity of marijuana found growing on the Littlefields' property. Even Browne, plaintiffs' medical marijuana expert, tacitly acknowledged that quantity can be considered in distinguishing between lawful and unlawful possession when he stated that "dispensaries generally do not provide 'pounds' of cannabis to their members at any given time . . . as it could rightly be perceived as diversion into the criminal market.' " On the undisputed facts, the trial court reasonably found that "[t]he amounts possessed were of such a quantity to lead a person of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. The amounts possessed were so well beyond the standards promulgated by state and local authorities to lead a reasonable person to believe that the marijuana was possessed for unlawful purposes."

There is no merit in plaintiffs' contention that any reasonable suspicion of unlawful possession the officers may have initially harbored was necessarily vitiated when they found the medical recommendations. The CUA protects the possession of marijuana only in an amount reasonably related to the user's current medical needs. (*People v. Kelly*, 47 Cal.4th at p. 1043.) To this end, when a user has a written recommendation from a physician, the Attorney General's 2008 Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use (Guidelines) direct that police officers "should use their sound professional judgment to assess the validity of the person's medical-use claim" based on the totality of the circumstances, including the quantity of marijuana present and the presence of weapons.[3]

---

[3] We grant plaintiffs' motion for judicial notice of the Guidelines and various Humboldt County ordinances.

9

Here, the sheer quantity of marijuana under cultivation could lead a reasonably prudent officer to conclude that plaintiffs' production far exceeded their medical needs. "Probable cause is a flexible commonsense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution to believe that certain items may be contraband. It does not require a showing that such a belief be correct or more likely true than false. A ' "practical, nontechnical" ' probability that incriminating evidence is involved is all that is required." (*People v. Holt* (1989) 212 Cal.App.3d 1200, 1204.) Dr. Bensky's recommendations supplied further reason for skepticism. Each purports to authorize the use of up to two ounces per person per day, or 45.6 pounds of cannabis per person per year—*15 times* the three pounds per year deemed reasonable under the County's Ordinance.[4] Officers could also reasonably question the likelihood that all five of Dr. Bensky's patients, including four members of the Littlefield family, suffered from degenerative bone disease and/or low back pain. We are not surprised that Sergeant Hansen doubted the validity of Dr. Bensky's recommendations.

It is not entirely clear from plaintiffs' briefs whether they also claim the search and seizure were illegal because the deputies did not obtain a warrant. If they do, they are wrong. The officers' entry onto the property was consistent with the "open fields" doctrine set forth in *Oliver v. United States* (1984) 466 U.S. 170, 176-179. " '[T]he special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers, and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law.' " (*Id*. at p. 176, quoting *Hester v. United States* (1924) 265 U.S. 57, 59, Holmes, J.)

_____

[4] Plaintiffs argue the County's Ordinance is unconstitutional for the reasons articulated in *People v. Kelly, supra,* 47 Cal.4th 1008, to the extent it sets limits on the amount of medical marijuana that may be legally possessed. They are precluded from raising this claim on appeal because they did not do so in their complaint or in the summary judgment proceedings. In any event, their claim, regardless of whatever merits it may or may not have, has no bearing on the question of probable cause. "An arrest made in good faith reliance on an ordinance (even though) subsequently declared to be unconstitutional is made with probable cause and is valid." (*In re Hector R.* (1984) 152 Cal.App.3d 1146, 1152; *Michigan v. DeFillippo* (1979) 443 U.S. 31, 37-38.)

10

We agree with the trial court that the County's undisputed evidence established that the officers had probable cause, based on the amount of marijuana under cultivation and plaintiffs' extremely generous medical marijuana recommendations, to believe the seized marijuana was unlawfully possessed.

## C. The County Lawfully Destroyed the Seized Marijuana

Plaintiffs contend the County unlawfully converted their property and violated their constitutional and statutory property rights when it destroyed the seized marijuana. Here, too, we disagree.

Section 11479 addresses the destruction of controlled substances without court order, as follows: "Notwithstanding Sections 11473 and 11473.5, at any time after seizure by a law enforcement agency of a suspected controlled substance, that amount in excess of 10 pounds in gross weight may be destroyed without a court order" provided the agency satisfies specified requirements. (§ 11479 subds. (a)-(d).)[5] Among those requirements are that the agency make a determination that it is not reasonably possible to preserve the suspected controlled substance in place, or to relocate it to another

_____

[5] Those requirements are: "(a) At least five random and representative samples have been taken, for evidentiary purposes, from the total amount of suspected controlled substances to be destroyed. These samples shall be in addition to the 10 pounds required above. When the suspected controlled substance consists of growing or harvested marijuana plants, at least one 10 pound sample (which may include stalks, branches, or leaves) and five representative samples consisting of leaves or buds shall be retained for evidentiary purposes from the total amount of suspected controlled substances to be destroyed. [¶] (b) Photographs have been taken which reasonably demonstrate the total amount of the suspected controlled substance to be destroyed. [¶] (c) The gross weight of the suspected controlled substance has been determined, either by actually weighing the suspected controlled substance or by estimating that weight after dimensional measurement of the total suspected controlled substance. [¶] (d) The chief of the law enforcement agency has determined that it is not reasonably possible to preserve the suspected controlled substance in place, or to remove the suspected controlled substance to another location. In making this determination, the difficulty of transporting and storing the suspected controlled substance to another site and the storage facilities may be taken into consideration." The following and last paragraph requires a law enforcement agency that destroys suspected contraband pursuant to section 11479 to file an affidavit describing its compliance with subdivisions (a) through (d) and other specified information.

11

location (§ 11479, subd. (d).) In addition, the agency must file an affidavit within 30 days after destroying the seized substance reciting the required information "together with information establishing the location of the suspected controlled substance" and the date and time of its destruction. (§ 11479, subd. (d).)

Here, plaintiffs complain the sheriff's department did not make the determination required by section 11479, subdivision (d). Plaintiffs are incorrect. The day after the raid, Deputy Cyrus Silva filed an affidavit stating "The Sheriff of Humboldt County has determined that it is not reasonably possible to preserve the marijuana in place or at another location. This determination was based on the fact that Humboldt County does not have adequate storage facilities, or sufficient personnel to guard the marijuana. In addition, recently harvested marijuana gives off great volume of heat and may erupt into fire." The affidavit satisfied the statutory requirement.

Plaintiffs' complaint that Deputy Silva's affidavit was not file-stamped is immaterial as Silva's declaration was the second page of a two-page document filed, and file-stamped, on October 8, 2008. Plaintiffs assert the County failed to produce the affidavit in response to a 2010 discovery request,[6] but they did not move to exclude it on that basis and so cannot now object that the court considered it. (Code Civ. Proc., § 437c, subd. (b)(5).) To the extent plaintiffs suggest the sheriff's department *fabricated* the Silva affidavit, citing both the County's failure to produce it in discovery and purported "stylistic differences" between the Silva and Fulton affidavits, we, like the trial court, find their suspicions far too speculative to approach a genuine and material question of fact.

Plaintiffs do, however, correctly observe that the deputies' affidavits fail to specify where the marijuana was seized and the precise date and time of its destruction, as called for in the last paragraph of section 11479. No matter. Section 11479, subdivision (d) requires that the law enforcement agency's affidavit provide "information establishing

_____

[6] The County says that was due to a clerical copying error, but provides no factual support for that explanation. It proffered the Silva declaration with its opposition to Plaintiffs' summary judgment motion.

12

the location of the suspected controlled substance, and specifying the date and time of the destruction." Here, there is no question about where the marijuana was seized, and Silva's affidavit shows that it was destroyed before 11:00 the morning after the raid. There could be no possible prejudice from the lack of more detailed or precise information. Nor is there any question but that the Department followed all of the procedures required as a precursor to destroying the suspected contraband. (See § 11479, subds. (a)-(d).) The County's compliance with section 11479 was sufficient. (See *People v. Eckstrom* (1986) 187 Cal.App.3d 323, 335 [substantial compliance required]; *People v. Superior Court (Calamaras)* (1986) 181 Cal.App.3d 901, 905 [substantial compliance]; see also *People v. Wilson* (1987) 191 Cal.App.3d 161 [requiring strict compliance, but finding standard satisfied because police photographs of plants were comparable to samples of growing plants].)

### D. Plaintiffs Failed to Proffer Admissible Evidence of Lawful Possession

A plaintiff moving for summary judgment is required to "prove[] each element of the cause of action entitling the party to judgment on that cause of action. Once the plaintiff or cross-complainant has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437(c)(p)(1).) Here, plaintiffs contend that they satisfied their burden by proving they lawfully possessed the seized marijuana, and that the trial court erred when it found that they failed to proffer sufficient competent evidence of such lawful possession. Not so.

The court explained its ruling as follows: "Under the Compassionate Use Act . . . , the amount of marijuana possessed must be 'reasonably related to the patient's current medical needs.' (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1549.) Conspicuously absent in the evidence adduced for the cross-motions for summary judgment/adjudication is any opinion by a qualified medical expert as to the amount of marijuana that the [plaintiffs] require for treatment of their ailments. There is nothing in the Declaration of plaintiffs' expert Jason Browne establishing that he possesses the requisite expertise to render a medical opinion as to the specific needs of the plaintiffs." The court considered

13

Dr. Bensky's written medical marijuana recommendations for their effect on a reasonable officer assessing the existence of probable cause, but excluded their use as hearsay to prove legal possession.

The ruling is sound. "What precisely are the 'patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact." (*People v. Trippet, supra,* 56 Cal.App.4th at p. 1549.) Plaintiffs failed to adduce competent evidence of their medical needs or the quantity of marijuana reasonably needed for their treatment. Jason Browne apparently has considerable experience in the field of medical cannabis cultivation, use, and advocacy, but he is not qualified to give an expert opinion as to plaintiffs' medical conditions and medical needs. " '[T]he qualifications of an expert must be related to the particular subject upon which he is giving expert testimony.' [Citations.] Consequently, 'the field of expertise must be carefully distinguished and limited' [citation], and '[q]ualifications on related subject matter are insufficient.' " (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115; see also *Hayman v. Block* (1986) 176 Cal.App.3d 629, 642-644 [trial court must consider competency of evidence presented on summary judgment].) As the court observed, the lack of competent medical evidence that the quantity of marijuana was reasonably related to plaintiffs' current needs "leaves a gaping hole in plaintiffs' case." Neither their status as qualified patients nor Dr. Bensky's written recommendations sufficed to fill that gap.

Plaintiffs' failure to proffer competent evidence showing they had a legal right to possess the seized marijuana was fatal to their common law, statutory and constitutional claims for interference with their property rights. (See *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1065 [conversion]; *cf. County of Butte v. Superior* Court (2009) 175 Cal.App.4th 729, 734, see *id.* at pp. 744-745 (dis. opn. of Morrison, J.)[basis for conversion and related property claims if plaintiff can show legal right to possession]; *People v. One 1941 Chevrolet* Coupe (1951) 37 Cal.2d 283, 286 [due process].) Accordingly, the trial court properly denied plaintiffs' motion for summary judgment and entered summary judgment in favor of the County.

## DISPOSITION

The judgment is affirmed.

                        _____

                        Siggins, J.

We concur:

_____

McGuiness, P.J.

_____

Jenkins, J.

Filed 7/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROSCOE LITTLEFIELD et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF HUMBOLDT,<br><br>     Defendant and Respondent. | A135628<br><br>(Humboldt County<br>Super. Ct. No. DR090888)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

     The opinion in the above-entitled matter filed on June 28, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date:                               _____ P. J.

1

Trial Court:                                    Humboldt County Superior Court

Trial Judge:                                    Hon. Christopher G. Wilson

Counsel for Plaintiffs and Appellants:          Karen Diane Olson
    Roscoe Littlefield, et. al.
                                                Donna Bader

Counsel for Defendant and Respondent:           William Forrest Mitchell
    County of Humboldt                          MITCHELL BRISSO DELANEY &
                                                VRIEZE

*Littlefield v. County of Humboldt*, A135628