[Crim. No. 11922. Third Dist. Dec. 16, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD NORMAN TOLHURST et al., Defendants and Appellants.

COUNSEL

Richard Potack for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Garrett Beaumont, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

EVANS, J.—Defendants Todd and Cheryl Tolhurst appeal from a conviction of possession of marijuana for sale. (Health & Saf. Code, § 11359.)[1] The issues raised on appeal primarily concern the police destruction of marijuana pursuant to Health and Safety Code section 11479. We affirm the judgment.

The case was submitted on the basis of the preliminary hearing transcript. On October 2, 1980, a search warrant was executed on defendants' property in Nevada County. The warrant was issued based on an affidavit prepared by Nevada County Sheriff's Investigator Tanner, who had made observations of defendants' property during an aerial overflight. The return to the search warrant, signed by Tanner, stated that "All of the property taken by virtue of said warrant will be retained in my custody subject to the order of this court or any other court in which the offense in respect to which the property or things taken is triable."

The search revealed four marijuana gardens under cultivation, a jar containing a roach, marijuana and labels, a book on how to grow marijuana, photos showing the postcultivation of marijuana, ziplock plastic bags and black containers, and various other miscellanea. Based on this evidence Investigator Tanner concluded marijuana was being cultivated for sale.

Pursuant to department policy[2] Tanner directed the sheriff's officers to effect compliance with Health and Safety Code section 11479. Investigator Mason counted 103 marijuana plants growing on the Tolhurst property. Photographs were taken of the four marijuana gardens and of the harvested plants in bulk. Five representative samples were obtained, placed in envelopes and sent to the Department of Justice laboratory for chemical analysis. Another sample of 10 pounds was placed in a laundry bag, tagged and stored in an "evidence locker"

[1]Charges that defendants violated Health and Safety Code sections 11358 and 11357, subdivision (a), were dismissed in the interest of justice.

[2]In July or August 1980, Nevada County Sheriff Wayne Brown had ordered section 11479 to be utilized because of insufficient storage facilities.

at the Nevada County Sheriff's office. The remainder of the plants were transported to the sheriff's office for temporary storage and on the following day weighed[3] and photographed. This marijuana was subsequently destroyed.

Deputy Alaways was one of the officers assigned the task of destroying the marijuana. In conjunction therewith he signed an affidavit prepared by Investigator Mason reciting the information required by section 11479. Mason testified he did not know whether Alaways had personal knowledge of the number and weight of the plants, information that was included in the affidavit. Alaways did not testify.

I

Defendants advance a two-pronged challenge to the trial court's denial of their motion to suppress evidence of the destroyed marijuana. First, they contend the marijuana was unlawfully destroyed pursuant to section 11479 because the search warrant ordered *all* evidence to be brought before the court. Second, they argue that even if reliance on section 11479 was not itself improper, the officers here failed to comply with its requirements.

*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], establishes by judicial fiat that intentional suppression of material evidence favorable to a defendant who has requested it constitutes a violation of due process, irrespective of good or bad faith on the part of the prosecution. However, the legislative process has established an exception to that general principle. Health and Safety Code section 11479, as amended in 1979, provides in pertinent part, "Notwithstanding the provisions of Sections 11474 and 11474.5, at any time after seizure by a law enforcement agency of a suspected controlled substance, that amount in excess of 10 pounds of gross weight may be destroyed *without a court order* by the chief of the law enforcement agency or a designated subordinate. Destruction shall not take place pursuant to this section until all of the following requirements are satisfied: [¶] (a) At least five random and representative samples have been taken, for evidentiary purposes, from the total amount of suspected controlled substances to be destroyed. [¶] (b) Photographs have been taken which reasonably demonstrate the total amount of the suspected controlled substance sampled and to be destroyed. [¶] (c) The gross weight of the suspected controlled substance has been determined, either by actually weighing the suspected controlled substance or by estimating such weight after dimensional measurement of the total suspected controlled substance. *When the suspected controlled substance consists of growing or harvested plants, only a representative sample need to be retained for evidentiary purposes.* [¶] (d) The chief of the law enforcement agency has determined that it is not reasonably possible to preserve the suspected con-

---

[3]A "weigh slip" admitted into evidence at the preliminary hearing indicated the marijuana weighed 360 pounds.

trolled substance in place or to remove the suspected controlled substance to another location. . . ." (Italics added.) We note for emphasis that subdivision (c), as an exception to the requirement that 10 pounds of the suspected controlled substance be retained, specifically authorizes the retention of but "a representative sample . . . for evidentiary purposes" when a controlled substance consists of growing or harvested plants as it did in this instance. Abstract application of the *Hitch* doctrine in this instance is inappropriate inasmuch as the police acted pursuant to, and in strict compliance with, statutory authority (§ 11479) for the destruction of controlled substances. (See *City of Sacramento* v. *Municipal Court* (*Pope*) (1978) 83 Cal.App.3d 795 [148 Cal.Rptr. 114].)

Although the search warrant in this case recites the general rule requiring police to obtain a court order for the destruction of evidence (see Pen. Code, § 1536; Health & Saf. Code, §§ 11473.5, 11474), section 11479 creates a specific exception to this general rule: the section expressly authorizes the destruction of some part of the contraband *without court order* when large amounts of suspected controlled substances are seized.

As there is no requirement that police obtain prior judicial approval before using section 11479, it cannot be argued that the failure to notify the magistrate of an intent to invoke the statute rendered the police action unlawful. There is no conflict between the language of the warrant and the compliance with the terms of section 11479.

On the question of compliance with the requirements of section 11479, the record reveals scrupulous conformance. The officers seized and segregated five representative samples, took photographs of both the gardens and the plants in bulk, and determined the total weight of the harvested marijuana. However, defendants suggest that noncompliance is indicated by the fact that Officer Mason had filled in the weight and number of plants on the affidavit before handing it to Officer Always to sign, even though Mason had not been present at the weighing.

Subdivision (c) of section 11479 specifically authorizes the retention of but *one* representative sample for evidentiary purposes when the "controlled substance consists of *growing or harvested plants.*" (Italics added.) Thus, the fact that Mason or Always may not have personally weighed the marijuana is of no consequence, since such a weighing was not required by the statute. In any event, it would be unreasonable to interpret the statute to require the affiant himself to have personally completed the various tasks required by the statute. It is enough that a police officer submits a sworn statement that the requirements have been carried out and recites the relevant information to that effect.

We reject defendants' further claim that subdivision (d) of section 11479 was not satisfied. That section requires the chief of the law enforcement agency to make a determination that it is not reasonably possible to preserve the suspected controlled substance because of storage and/or transportation problems prior to authorizing the destruction of evidence.

Officer Tanner testified that in July or August 1980, Nevada County Sheriff Wayne Brown made a verbal order that marijuana was henceforth to be destroyed pursuant to section 11479 because of insufficient storage facilities. There is no challenge to the truthfulness of this determination and no claim that conditions had changed since the order was issued. ██ ██ ██ ██ ██ Sheriff Brown's determination and verbal order that storage space was insufficient satisfied the statute.[4]

## II

██ Defendants next argue section 11479 is unconstitutional in that it fails to require notice to defendants prior to the destruction of the controlled substance. They note that section 11479, prior to its amendment in 1979 (Stats. 1979, ch. 865, § 1), contained such a requirement.

This issue was not raised in the trial court at any stage of the proceedings. ██ As a general rule "failure of counsel to raise issues at the trial level precludes raising those issues on appeal for the first time. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 537-538 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Campbell* (1965) 233 Cal.App.2d 38, 47-48 [43 Cal.Rptr. 237].)" (*People* v. *Ferrel* (1972) 25 Cal.App.3d 970, 976 [102 Cal.Rptr. 372]; see also *People* v. *Brown* (1980) 110 Cal.App.3d 24, 32 [167 Cal.Rptr. 557].) ██ In any event defendants' contention lacks merit.

The degree of procedural due process required under the California Constitution depends on a careful weighing of the private and governmental interests in-

---

[4]At trial defendants also moved under *Hitch* to dismiss and for sanctions on the ground that the police failed to preserve (1) photographs taken by Officer Tanner during aerial surveillance of the Tolhurst property that were lost, and (2) a tape recording made by Tanner during the subsequent search of the property that was erased by Tanner's secretary after transcription.

We reject this contention for the simple reason that defendants have failed to make a showing of the substantial materiality of the evidence, e.g., that the aerial photos or tape recording were relevant or material to their guilt or innocence. (See *People* v. *Garnica* (1981) 121 Cal.App.3d 727, 733 [175 Cal.Rptr. 521]; *People* v. *Keith* (1981) 118 Cal.App.3d 973, 984 [173 Cal.Rptr. 704]; *People* v. *Ammons* (1980) 103 Cal.App.3d 20, 32-33 [162 Cal.Rptr. 772].) The photos—through no apparent fault of the police—did not come back from the developers and had nothing to do with the unchallenged accuracy of the ground observations which formed the basis of the affidavit in support of a search warrant. The tape recording contained no statements relevant to guilt or innocence and was erased *only after it* was transcribed; the transcription was available to defendants for inspection. Tanner testified the transcription recited verbatim the information on the tape.

volved. "In determining applicable due process safeguards, it must be remembered that 'due process is flexible and calls for such procedural protections as the particular situation demands.' [Citation.] [¶] . . . [I]dentification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. (See *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 561 [150 Cal.Rptr. 129, 586 P.2d 162].)" (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622].)

■ We acknowledge that the quantity and quality of the contraband seized is always relevant to the issue of whether narcotics are held for sale or personal use (*People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 77 [96 Cal.Rptr. 513]), and that persons charged with drug offenses have a significant interest in having an opportunity to examine, and perhaps have chemical tests performed on, evidence to be offered against them. (See *People* v. *Backus* (1979) 23 Cal.3d 360, 384 [152 Cal.Rptr. 710, 590 P.2d 837].) The state may not arbitrarily deny such a right or foreclose a defendant from securing potentially favorable evidence. (See *People* v. *Nation* (1980) 26 Cal.3d 169, 176 [161 Cal.Rptr. 299, 604 P.2d 1051].)

■ However, the provisions of section 11479 protect the defendants' interest. It requires that a substantial quantity of the controlled substance be preserved (10 pounds and 5 representative samples or representative plants when growing or harvested), and therefore available for a defendant to examine and test chemically. In addition, defense counsel will also have available photographs and the officers' determination of the total weight of the controlled substance, both of which may be used in any attempt to impeach the officers' testimony. Under the circumstances, a defendant's interest would not be furthered by requiring notice prior to the destruction of the evidence.

Balancing the defendants' interest in examining the quantity and quality of evidence to be presented against them against the People's interest in a procedure designed to reduce the administrative burden and expense of storing and securing huge quantities of contraband,[5] we find no persuasive justification to

---

[5]In *In re Tucker* (1971) 5 Cal.3d 171, 179 [95 Cal.Rptr. 761, 486 P.2d 657], our Supreme Court stated that "In determining whether or not a particular procedure violates due process requirements, we should bear in mind the probable costs and consequences involved in casting excessive burdens upon administrative machinery. [Citations.]"

require notice to defendants prior to destruction of controlled substances pursuant to section 11479.

The judgment is affirmed.

Regan, Acting P. J., and Blease, J., concurred.