Filed 10/18/23  P. v. Smothers CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER ROBERT SMOTHERS,<br><br>Defendant and Appellant. | F084722<br><br>(Super. Ct. No. F20901683)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Hill, P. J., Franson, J. and Snauffer, J.

Defendant Christopher Robert Smothers appeals following his conviction by a jury, and the subsequent sentence imposed by the trial court. The only issue defendant raises in this appeal concerns the question of whether the court improperly rejected a proposed plea agreement on the second day of trial after defendant asked a question about his right to appeal a specific issue. Following our review of the entire series of events presented in the record of this case and the standard of review applicable to a proposed plea agreement, we affirm the judgment.

## BACKGROUND SUMMARY

On June 14, 2022, a first amended information was filed against defendant alleging unlawful sexual intercourse with a minor under the age of 16 (Pen. Code,[1] § 261.5, subd. (d), a felony; count 1), distributing or showing pornography to a minor (§ 288.2, subd. (a)(2), a felony; count 2), sexual penetration of a victim under the age of 16 (§ 289, subd. (i), a felony; count 3), and contact or communication with a minor with the intent to commit a sexual offense (§ 288.3, subd. (a), a felony; count 4). This case involves acts that occurred in 2016 and 2017 that were originally charged in a complaint filed in 2020.[2]

During the early stages of this case in 2020 and 2021, a resolution involving a plea agreement appeared possible. For instance, in September 2021, the prosecution announced an offer to resolve this matter if defendant entered a plea to count 1 that would require him to register as a sex offender for a period of 10 years. If defendant agreed to plead to count 1, the other three counts would be dismissed. In November 2021, defendant's attorney signaled the parties were close to a possible resolution of case. In December 2021, defendant acknowledged there had been discussions about a resolution

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] The facts underlying the specific charges alleged are not relevant to the sole issue raised in this appeal, and therefore, will not be presented in detail here.

of the case. In January 2022, defendant's attorney again suggested a resolution was hopeful. However, just a few days later, defendant's attorney asked that the matter be set for trial with no further settlement conferences. Finally, in April 2022, everyone appeared to acknowledge that there would be no resolution of the case because defendant refused to agree to the requirement he register as a sex offender for 10 years. The case then proceeded toward a trial date.

On the first day of trial on June 13, 2022, the trial court acknowledged the existence of various motions in limine. However, before any motions were considered, the court obtained the approval of all parties for a jury prescreening document that the court intended to provide to the jury commissioner who would also be informed that a jury would be needed the following day.

On June 14, 2022, after the parties stated their appearances, the trial court noted the jury prescreening process had already been completed. The court then acknowledged it had been informed there might be a change of circumstances. The following exchange then occurred:

> "[DEENSE COUNSEL]: I believe there's a resolution and a change of plea form has been executed.

> "THE COURT: All right. And the People are agreeable with the resolution and the People are wanting me to take this this morning?

> "[PROSECUTOR]: Yes, Your Honor. It is the offer that the People had conveyed for [defendant] to plead to Count 1, the 261.5(d) stipulating to the ten-year—or to the registration of 290."

After some technical matters were addressed, a further discussion about the proposed plea continued:

> "THE COURT: Okay. I want to make sure the defense—that you spent plenty of time with your client and [that] he understands that?

> "[DEFENSE COUNSEL]: Yes, Judge.

3.

"THE COURT:  Okay.  And the defense waives in the interest of justice as well at this time?

"[DEFENSE COUNSEL]:  Yes, especially in light of [defendant's] substantial time credits.

"THE COURT:  Right.  Okay.  [¶]  So, [defendant], the truth is usually I don't take a plea at this stage of the trial.  Counsel—I met with counsel this morning and said we're past the negotiation stage and they said, 'Judge, you didn't say that on the record yesterday.'  And I remember we were going back and forth on the offer and counter offers and as I think about it, I probably wasn't clear about that.  I just took it for granted we were going to trial and I didn't make it as clear.  I'm told by your attorney—who is very, very good by the way—that he felt like this is really in the interest of justice to you and he's had a chance to speak to family members.  Since there's vagueness in what I sa[id], I'm going to make sure you're going to get the benefit of the doubt.  I'll take your plea this morning but understand this is going to be a final thing because this is what I did yesterday afternoon and evening and I've spent a lot of time on your case and I wouldn't have spent that time if I had taken the plea yesterday.  [¶] So is this what you would like to do, sir?

"THE DEFENDANT:  Yes.

"THE COURT:  I'm showing you the change of plea and waiver of rights form and the firearms relinquishment form.  Do you see both of those forms, sir?

"THE DEFENDANT:  Yes.

"THE COURT:  Did you read and understand both forms?

"THE DEFENDANT:  Yes.

"THE COURT:  Do you have any questions about either form?

"THE DEFENDANT:  No.

"THE COURT:  All right.  Then—

"THE DEFENDANT:  I have one question.  I'm still able to appeal the 1382, correct?

"THE COURT:  I couldn't hear that.

"THE DEFENDANT: I can still appeal the 1382, correct?

"THE COURT: Well, I don't know, sir. Usually most of the time— if you're planning on appealing, you should go to trial. Okay? All right. I'm really—

"THE DEFENDANT: I need some more time then.

"THE COURT: Okay. Because there would be a—actually, that changed my mind. We're going to go to trial. Call the jurors."

Following a recess, the trial court started to address various pretrial motions. Defendant interrupted twice, stating he merely wanted to talk to his attorney one last time. The court informed defendant it would not argue any further, and that they would go forward with the trial. The court then took up the first motion.

After rejecting defendant's challenge that his *Miranda*[3] rights had been violated when he was arrested, but before jury selection started, the court returned to the earlier discussion about the plea, stating:

"[I]t's really not my practice to take a plea after we've done the work and I've done most of the jury instructions. I just want to make that clear. Once the gentleman started asking about appeals, you see, appeals would require a statement of probable cause based upon a plea in most areas and that's not something I would sign usually, on a plea of this nature, so, you know, it's just best we do the trial that way he has all his rights preserved.[4] We have prepared this case for trial and we'll find out what the jury is going to say.…"

A jury was sworn in by the end of the court session on June 14, 2022. The jury heard evidence the following day and returned a verdict of guilty on all four counts on June 16,

---

**3**     *Miranda v. Arizona* (1966) 384 U.S. 436.

**4**     Defendant submitted a request asking this court to take judicial notice of an e-docket from the Fresno County Superior Court of the cases brought against him in this matter to show he "objected to continuances and raised timeliness issues." We believe the trial court's statement here shows the issue of any potential violation of section 1382 was preserved at that time. As a result, the relevance of the e-docket to this question is unnecessary. (See Evid. Code, § 455.) The request for judicial notice is therefore denied.

2022.  After being sentenced on all four counts to a total term of four years eight months, defendant filed a notice of appeal the next day.

**DISCUSSION**

Again, the only issue before this court is whether the trial court improperly rejected a proposed plea agreement for defendant when it refused to allow defendant to ask any more questions, and instead, chose to move forward with the trial.

**I.    Plea Agreements**

**A.    The Standard of Review**

Pursuant to the Penal Code, a proposed plea agreement may be submitted for a court's approval that specifies a punishment the defendant will receive.  (§ 1192.5.)  The trial court maintains "exclusive discretion" on whether to approve or disapprove such a proposed agreement.  (*People v. Morris* (1979) 97 Cal.App.3d 358, 363.)

The process involved in approving a plea agreement negotiated by the People and the defendant requires judicial approval before the agreement can be considered effective.  (*People v. Segura* (2008) 44 Cal.4th 921, 929–930.)  When deciding whether to approve or disapprove a proposed plea agreement, a trial court must take into account the need to protect and promote the public's interest in protecting victims of crimes, the need to vigorously prosecute the accused, and the need to impose an appropriate punishment.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.)  The court must also explore whether the defendant understands all the constitutional rights he or she is waiving by entering into the agreement.  (*People v. Cross* (2015) 61 Cal.4th 164, 170.)  If the court believes the agreed-upon disposition is not fair to any party, it may reject the agreement, but it cannot change the agreement without the consent of the parties.  (*Segura*, at p. 931.)

This court in *People v. Loya* (2016) 1 Cal.App.5th 932, 947 (*Loya*), recognized that plea negotiations and agreements "are an integral, essential and accepted component of our criminal justice system."  However, plea agreements can be "subject to reasonable time constraints on their delivery to the court."  (*People v. Cobb* (1983) 139 Cal.App.3d

6.

578, 586–587.) In fact, "the competing interests of accurately scheduling court calendars and judiciously taking pleas to avoid trial can be accommodated while reasonably restricting pleas to certain time periods." (*Id*. at p. 585.)

A deferential abuse of discretion standard is used to analyze whether a trial court has properly accepted or rejected a negotiated plea agreement. (See *Loya*, *supra*, 1 Cal.App.5th at p. 946.) A court does not abuse this broad standard when questioning whether a defendant has doubts about the agreement or suspects the defendant may not have accepted the plea agreement in good faith. (*People v. Simmons* (2015) 233 Cal.App.4th 1458, 1467–1468.)

### B.     Waiver of the Right to Appeal Following a Plea Agreement

The question defendant sought to ask the trial court, which resulted in the court rejecting the plea agreement at that time, involved a claim that his right to a speedy trial had been violated.[5] Generally, under section 1237.5:

> "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met:
>
> "(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.
>
> "(b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court."

---

[5]     Again, the only issue on appeal involves the court's refusal to consider a potential plea agreement on the second day of trial. Speedy trial has not been raised or discussed outside the context of this potential agreement. We discuss it here only in this limited context and consider any actual argument that defendant's right to a speedy trial was violated as waived. " 'Issues not raised in an appellant's brief are deemed waived or abandoned.' " (*Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 687.)

Appellate waivers contained within plea agreements are enforceable in most instances. (*People v. Becerra* (2019) 32 Cal.App.5th 178, 186.)  In fact, the benefit of entering into a plea agreement would be effectively eliminated if a court were to disallow the waiver of a right to appeal which was agreed to by the parties.  (*Ibid*.)

" 'A broad or general waiver of appeal rights ordinarily includes error occurring before *but not after* the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error.' " (*People v. Orozco* (2010) 180 Cal.App.4th 1279, 1284.)  Furthermore, " 'to appeal from a superior court judgment after a plea of guilty or nolo contendere' a defendant must obtain a certificate of probable cause subject to certain exceptions, including that the appeal is on '[g]rounds that arose after entry of the plea and do not affect the plea's validity.' " (*People v. Allison* (2019) 39 Cal.App.5th 688, 698, italics omitted, citing Cal. Rules of Court, rule 8.304(b)(1), former (4)(B).)

### C.    Application to This Case

In his opening brief, defendant contends there was "no question that the trial court approved the terms of the plea agreement," never indicating its belief the terms "were unfair or contrary to the public interest or otherwise unacceptable."  As a result, when the court stated, " 'I'll take your plea this morning,' " defendant believed the court had already accepted the plea before rejecting it once defendant asked a question.  We do not reach the same conclusion.

Instead, our review of the record leads us to conclude the trial court was simply starting the process it was required to go through to assure itself that the agreement was fair and that each party understood the ramifications of entering into the plea.  This almost always involves a discussion with the defendant to ascertain whether there is an understanding of the terms of the agreement.  If after posing questions to the defendant the court believes the agreed-upon disposition is not fair to any party, including the defendant, it may reject the agreement.  (*People v. Segura*, *supra*, 44 Cal.4th at p. 931.)

Defendant appears to rely heavily on case law which is discussed by this court in *Loya* to argue that once the court accepted the plea, reasons had to be stated on the record before the court could reverse its decision. However, unlike *Loya*, we do not believe the record here shows the trial court accepted the plea agreement necessitating a statement on the record detailing why the court was reversing its decision. (See *Loya*, *supra*, 1 Cal.App.5th at pp. 947–948.)

In our review of the exchange between defendant and the trial court, it is entirely reasonable to conclude the court appeared to be on the way to accepting the plea agreement. However, after confirming to the court he had no questions about the change of plea forms he was about to execute, defendant asked if he would still be able to pursue his appeal of the section 1382 issues concerning the right to a speedy trial. The court responded, "[u]sually most of the time—if you're planning on appealing, you should go to trial. Okay?" Defendant then responded that he needed more time. After rejecting defendant's pretrial motion arguing his *Miranda* rights had been violated, the court returned to the issue of the plea agreement, and stated it was unlikely to issue a certificate of probable cause to preserve the issue defendant wanted to appeal.

It is our belief the trial court understood that by accepting the plea, defendant would be giving up his right to appeal the issue of a speedy trial. The court also likely believed defendant did not fully understand the terms of the plea agreement he had been presented with since appellate issues existing before a plea is entered are usually waived. (See *People v. Orozco*, *supra*, 180 Cal.App.4th at p. 1284.) Therefore, when defendant asked if his right to appeal any potential violation of his right to a speedy trial under section 1382 was still available, it would have been reasonable for the court to conclude defendant did not fully understand the terms of the plea agreement he had been offered. Under these circumstances, it was entirely reasonable for the court to reject the plea once defendant asked for more time to discuss the matter with his attorney. (See *People v. Cobb*, *supra*, 139 Cal.App.3d at p. 585.) We find no abuse of discretion on this record.

9.

## DISPOSITION

The judgment is affirmed.