Filed 5/2/25  Emmerick v. County of Kern CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARC EMMERICK,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF KERN et al.,<br><br>Defendants and Respondents. | F085830<br><br>(Super. Ct. No. BCV-19-101708)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Marc Emmerick, in pro. per., for Plaintiff and Appellant.

Margo A. Raison, County Counsel, Jeremy S. McNutt and Andrew C. Hamilton, Deputy County Counsel, for Defendants and Respondents County of Kern and Kevin Giorgio.

Zimmer & Melton, Nicholas J. Street and Justin L. Thomas for Defendants and Respondents Walter Ernst and Inyokern Community Services District.

-ooOoo-

Under Code of Civil Procedure[1] section 437c, subdivision (b)(1), a party moving for summary judgment must provide "a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed."  In turn, section 437c, subdivision (b)(3) requires a party opposing a summary judgment motion to provide "a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed," and "set[s] forth plainly and concisely any other material facts the opposing party contends are disputed."  An opposing party's "[f]ailure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion."  (*Ibid.*)

Plaintiff Marc Emmerick—proceeding in pro. per.—appeals from February 3, 2023 judgments of the Kern County Superior Court entered after orders granting summary judgment in favor of (1) defendants County of Kern (County) and Kevin Giorgio; and (2) defendants Walter Ernst and Inyokern Community Services District (District).  In compliance with section 437c, subdivision (b)(1), each set of defendants filed a separate statement.  Emmerick, however, did not file oppositions, let alone separate statements pursuant to section 437c, subdivision (b)(3).

For the reasons set forth below, we affirm the judgments.

## BACKGROUND

### I.      The operative complaint[2]

According to the complaint, sometime in October 2018, Emmerick was "making preparations to Access Water" at a "Sign Designated location" in Inyokern when he was

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

[2] Emmerick filed the original complaint on June 19, 2019; an amended complaint on October 17, 2019; a second amended complaint on May 15, 2020; a third amended complaint on October 22, 2020; and a fourth amended complaint on March 19, 2021.  A fifth amended complaint, i.e., the operative complaint, was filed September 13, 2021.

confronted by a public employee twice:  once by Giorgio, a sheriff's deputy, and once by Ernst, a District director.  Both Giorgio and Ernst engaged in egregious behavior toward Emmerick on account of his "Degenerative Physical and Mental Disability."

The complaint set forth 12 causes of action.  Eight were raised against County, Giorgio, Ernst, and District:  (1) negligence; (2) negligent infliction of emotional distress; (3) dangerous condition of public property (Gov. Code, § 835); (4) denial of services, programs, or activities of and/or discrimination by a public entity on the basis of disability, in violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) (ADA); (5) denial of full and equal access to the benefits of and/or unlawful discrimination under a program or activity conducted by, funded directly by, or receiving financial assistance from the state or discrimination thereunder (Gov. Code, § 11135); (6) denial of full and equal accommodations, advantages, facilities, privileges, or services in a business establishment on the basis of disability, in violation of the Unruh Civil Rights Act (Civ. Code, § 51); (7) violence and/or intimidation on the basis of disability, in violation of the Ralph Civil Rights Act (*id.*, § 51.7); and (8) interference with the exercise of state and/or federal constitutional or legal rights by threat, intimidation, or coercion, in violation of the Tom Bane Civil Rights Act (*id.*, § 52.1).  Three were raised against County and Giorgio:  (1) illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) fraud; and (3) false arrest. Finally, a cause of action for failure to discharge a mandatory duty imposed by an enactment (Gov. Code, § 815.6) was raised against County and District.

## II.    Summary judgment motions

### a.  *County and Giorgio*

On October 31, 2022, County and Giorgio filed a motion for summary judgment. They contended:  (1) Emmerick could not establish one or more elements of each cause of action against County and/or Giorgio; and (2) County and/or Giorgio were statutorily

3.

immune from liability. Accompanying the motion was a "Separate Statement of Undisputed Facts." (Boldface & some capitalization omitted.)

i. Facts set forth in separate statement

On October 14, 2018, Giorgio was on routine patrol in and around Inyokern when he saw Emmerick using a hydrant on the side of a road. The hydrant "was not in close proximity to residential property" and "appeared to be" "owned" "by a governmental agency." Such hydrants "are not generally available for public use without special permission." Emmerick "appeared to be filling a large water tank on a trailer towed by a pickup truck." The truck "appeared to be a personal vehicle" and "did not appear associated with any government agency, contractor, or water company typically permitted to use such a hydrant." Based on these observations, Giorgio decided to "investigate the matter to see if [Emmerick] had permission to use the hydrant or whether water theft was occurring."

Giorgio maneuvered his patrol vehicle behind Emmerick's truck pursuant to protocol. He "drove slowly, approximately 5 miles per hour," on the "rough dirt terrain" "to avoid damage to the vehicle and creating unnecessary dust." Because Giorgio did not know if anyone else was inside the truck, he parked "about 15-20 yards" away and approached on foot to "keep [Emmerick] and the truck in his view." When Giorgio was "about 10-15 feet away from [Emmerick]," Emmerick moved toward him, "immediately became belligerent," and "stated that Giorgio had no authority to talk to him." Giorgio asked Emmerick "whether he had a contract or some other permission to use the hydrant." Emmerick asserted, "Giorgio had no authority to conduct investigations unless he was dispatched." Giorgio "informed [Emmerick] that his statement was not true." Eventually, Emmerick "produced what Giorgio believed to be a document giving [Emmerick] permission to use the hydrant." Giorgio contacted a nearby patrol deputy "to confirm whether permission was needed for individuals to obtain water from hydrants in that area" and Emmerick "was permitted to continue using the hydrant." Emmerick

4.

"demanded Giorgio's name and badge number." Giorgio wrote down this information and handed it to Emmerick. Before Giorgio returned to his vehicle, he "thanked [Emmerick]" and "told him to have a nice day." Giorgio "drove slowly" away "because he was still on the rough dirt terrain."

The encounter between Giorgio and Emmerick lasted "between 10 to 20 minutes." At no point did Giorgio "raise his voice to [Emmerick]," "make verbal or physical threats towards [Emmerick]," "touch [Emmerick] other [than] to hand him his name and badge number," or "tell [Emmerick] that he was not allowed to leave." The two had been in "an open dirt lot" and "it would not have been possible for Giorgio to have blocked [Emmerick]'s movement." Giorgio was not "aware that [Emmerick] had a disability." While Giorgio noticed Emmerick "had some trouble speaking," Emmerick seemed to comprehend and in fact responded to Giorgio's questions. In any event, "Giorgio did not treat [Emmerick] any differently than any other member of the public due to [Emmerick]'s difficulty speaking." Finally, Giorgio's patrol vehicle never came "within 10 yards of" Emmerick.

b. *Ernst and District*

On October 31, 2022, Ernst and District filed a motion for summary judgment. They contended: (1) Emmerick could not establish one or more elements of each cause of action against Ernst and/or District; and (2) Ernst and/or District were statutorily immune from liability. Accompanying the motion was a "Separate Statement of Undisputed Material Facts." (Boldface & some capitalization omitted.)

i. Facts set forth in separate statement

District is a public entity that provides water services and utilities to Inyokern residents. On or around November 1, 1994, District passed Ordinance No. 94-4, which authorized members of the public to obtain a permit to procure " 'bulk water' from fire hydrants within [District]." (Boldface omitted.) In or around late 2017, Emmerick obtained this permit. The terms of the permit, which paralleled language in the

5.

ordinance, advised Emmerick he needed to " 'furnish said permit for inspection if requested to do so by a District employee or by law enforcement officer.' " (Boldface omitted.) The permit was set to expire December 31, 2018.

Ernst served as a District director between December 2016 and December 2020. In or around October 2018, Ernst was driving in and around Inyokern. He was accompanied by his friend V.C. as well as his dog. Ernst passed Emmerick, who was "pumping water out of [a District-]owned fire hydrant and into a large water tank located on a trailer behind his [truck]." (Boldface omitted.) Ernst, who had never met Emmerick, made a U-turn and stopped his vehicle "approximately 15 feet behind the back-end of [Emmerick]'s trailer." (Boldface omitted.) From inside his vehicle, Ernst—in his capacity as a "concerned [District] director"—asked Emmerick, " 'Are you authorized to get water out of that hydrant?' " (Boldface omitted.) Emmerick "immediately became irate and called Ernst a 'mother fucking cock sucker.' " (Boldface omitted.) Ernst looked at V.C. and remarked, " '[T]hey don't pay me enough to deal with this.' " (Boldface omitted.) Ernst then drove away. At no point during the encounter did Ernst "exit his vehicle"; "touch or come in close contact with [Emmerick]"; "say anything to [Emmerick] which could be interpreted as threatening and/or aggressive"; "assault [Emmerick]"; "batter [Emmerick]"; "allow his dog to leave his vehicle or control"; "take any discriminatory action against [Emmerick]"; "intend to harm [Emmerick]"; or "drive his vehicle in a threatening, hazardous and/or reckless manner around [Emmerick]." (Boldface omitted.)

"At no point in time has [Emmerick] ever been prohibited or stopped from obtaining water from [District's] water system during a time [when] he had a valid Bulk Water Permit." (Boldface omitted.) In his response to a request for admission propounded by Ernst and District, Emmerick "admits that Ernst never '. . . prohibited [him from] obtaining water' " (boldface omitted) and "admits that '[his] allegations are not of preclusion of access to water' " (boldface omitted). Prior to the lawsuit, District

6.

was not aware and had no reason to believe Emmerick was disabled.  In any event, District did not treat him "any differently than any other member of the public with regard to access to water, or in any other regard."  (Boldface omitted.)

## III.    Nonopposition to summary judgment motions

On January 11, 2023, County and Giorgio filed a "Notice of Non-Opposition in Support of their Motion for Summary Judgment."  (Boldface & some capitalization omitted.)  They specified "[t]he deadline for [Emmerick] to file an opposition" to the motion "was January 6, 2023," but "to date, [Emmerick] has not served or filed an opposition."  That same day, Emmerick was served with this notice.

Also on January 11, 2023, Ernst and District filed a "Notice of Non-Opposition in Support of their Motion for Summary Judgment."  (Boldface & some capitalization omitted.)  They also specified "[t]he deadline for [Emmerick] to file an opposition" to the motion "was January 6, 2023," but "to date, [Emmerick] has not served or filed an opposition."  That same day, Emmerick was served with this notice.

## IV.    Rulings

On January 20, 2023, the superior court conducted a hearing on the summary judgment motions.  Following the parties' arguments, the court granted both motions.

With respect to County and Giorgio's motion, the February 3, 2023 order and judgment pronounced:  (1) County and Giorgio "presented evidence sufficient to show that there are no triable issues of material fact as to one or more elements of each" cause of action; (2) Emmerick "presented no admissible evidence showing a triable issue of material fact as to any element of any" cause of action; (3) County and Giorgio "presented evidence sufficient to establish that [they] are entitled to immunity from liability" pursuant to Government Code sections 820.2 and 821.6; (4) County and Giorgio "presented evidence sufficient to establish that [Giorgio] is entitled to qualified immunity"; and (5) Emmerick "presented no admissible evidence showing a triable issue of material fact as to the[se] immunit[ies]."

7.

With respect to Ernst and District's motion, the February 3, 2023 order and judgment incorporated a January 20, 2023 minute order. The minute order pointed out the motion was "unopposed" and stated summary judgment was proper because (1) "there are no admissible facts or evidence to support [Emmerick's] claims"; and (2) "various immunities apply which shield Defendants, and each of them, from liability."

**DISCUSSION**

**I.      Overview of summary judgment law**

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); see *Lee v. Marchetti* (1970) 4 Cal.App.3d 97, 99 [" 'The salient philosophy behind this procedural device is to provide a method for the prompt disposition of actions and proceedings which have no merit and in which there is no triable material issue of fact . . . .' " (italics omitted)].)

A summary judgment motion "shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken. The supporting papers shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denying the motion." (§ 437c, subd. (b)(1).) An opposition to a summary judgment motion "shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (*Id.*, subd. (b)(2).) "The opposition papers shall include a separate statement that responds to each of the material facts

8.

contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (*Id.*, subd. (b)(3).) "The requirement of a separate statement from the moving party and a responding statement from the party opposing summary judgment serves two functions: to give the parties notice of the material facts at issue in the motion and to permit the trial court to focus on whether those facts are truly undisputed." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210 (*Parkview*).) "Without a separate statement of undisputed facts with references to supporting evidence in the form of affidavits or declarations, it is impossible for the [party opposing summary judgment] to demonstrate the existence of disputed facts." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116; see *Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902 ["The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process."].)

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (§ 437c, subd. (c).)

9.

A defendant seeking summary judgment bears an initial burden to produce evidence demonstrating either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849–850, 854–855.) If the motion is made against a plaintiff who would bear the burden of proof by a preponderance of evidence at trial, the defendant "must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Aguilar*, *supra*, at p. 851, italics & fn. omitted.) "The burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is heavier than the burden to show one or more elements of the plaintiff's cause of action cannot be established." (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289.) "Instead of merely submitting evidence to negate a single element of the plaintiff's cause of action, . . . 'the defendant has the initial burden to show that undisputed facts support each element of the affirmative defense' [citations]." (*Ibid.*, italics omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878–879 [preponderance of the evidence standard of proof].)

If the defendant makes a prima facie showing,[3] then the burden of production "shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) Where the defendant raises an affirmative defense, "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484; see *Vahle v. Barwick* (2001) 93 Cal.App.4th

---

[3] "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Aguilar*, *supra*, 25 Cal.4th at p. 851.)

1323, 1328 ["The plaintiff need not produce any evidence until the defendant has established every element of his or her defense."].) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2); accord, *Aguilar*, *supra*, 25 Cal.4th at p. 849.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion[4] that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Ibid.*, fn. omitted.)

## II.     Standards of review

"When reviewing the grant of a motion for summary judgment or summary adjudication, we independently consider whether a triable issue of material fact exists and whether the moving party is entitled to summary judgment or adjudication as a matter of law." (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 631, fn. omitted.) "In other words, we must assume the role of the trial court and reassess the merits of the motion. [Citation.] In doing so, we will consider only the facts properly before the trial court at the time it ruled on the motion. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)

"We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has

---

**4** Whereas a burden of production entails only the presentation of evidence, a burden of persuasion entails the establishment of a requisite degree of belief by way of such evidence. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

11.

established facts which negate the opponent's claim and justify a judgment in the moving party's favor.  When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493–494.)  "Our obligation is ' " 'to determine whether issues of fact exist, not to decide the merits of the issues themselves.' " ' [Citation.]  We must ' "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.' [Citations.]" (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 900.)  " 'We are not bound by the trial court's stated reasons or rationale.  Instead, we review the summary judgment without deference to the trial court's determination of questions of law.' [Citation.]" (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 994.)

While we "generally review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law" (*Parkview*, *supra*, 133 Cal.App.4th at p. 1208), "[a] trial court's decision to grant a motion for summary judgment because the opposing party failed to comply with the requirements for a separate statement . . . is reviewed for an abuse of discretion" (*ibid*.).  (See *Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 893 (*Blackman*) ["In the context of the exercise of discretion under [section 437c,] subdivision (b), . . . 'it should not be presumed but should be made to appear in the record.' "].)  "An abuse of discretion is an action which is arbitrary or capricious, or without basis in reason." (*Whitehead v. Habig*, *supra*, 163 Cal.App.4th at pp. 902–903.)  "In applying the abuse of discretion standard of review, it is not the role of the appellate court to substitute its own view as to the proper decision.  [Citation.]  The trial court's discretion, however, 'is not unlimited and must be " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of

12.

substantial justice.' " [Citations.]' [Citation.]  Moreover, we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits.  [Citations.]" (*Parkview*, *supra*, at pp. 1208–1209.)

"While subdivision (b) of section 437c allows the court, in its discretion, to grant summary judgment if the opposing party fails to file a proper separate statement, this provision does not authorize doing so without first determining that the moving party has met its initial burden of proof." (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086.)  "[U]nless the moving party has met its initial burden of proof, the court does not have discretion under subdivision (b) of section 437c to grant summary judgment based on the opposing party's failure to file a proper separate statement." (*Ibid.*; see *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416 [abuse of discretion where trial court "grant[s] a summary judgment based on a failure to file a separate statement when the moving parties have not in their moving papers set forth a prima facie showing for summary judgment"].)

## III.    Analysis

In the instant case, Emmerick raised various causes of action against two public entities (County and District) and their respective employees (Giorgio and Ernst).  (See Gov. Code, §§ 815.2, subd. (a) ["A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."], 820, subd. (a) ["Except as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person."].)  Two summary judgment motions were filed:  one by County and Giorgio and the other by Ernst and District.  As per section 437c, subdivision (b)(1), each set of defendants filed a separate statement.  Defendants subsequently filed notices of Emmerick's failure to controvert the motions.  Emmerick, who was served these notices, still did not file any opposition, let alone

comply with section 437c, subdivision (b)(3)'s separate statement requirement. Following the January 20, 2023 motion hearing, the superior court granted both motions, emphasizing Emmerick did not present any admissible facts or evidence to rebut defendants' prima facie showings. Additionally, the court specified Ernst and District's motion was "unopposed." Therefore, we apply the abuse-of-discretion standard of review. (See *Parkview*, *supra*, 133 Cal.App.4th at p. 1208; *Blackman*, *supra*, 193 Cal.App.3d at p. 893.) In so doing, "we must examine whether defendants made a prima facie showing that they are entitled to a summary judgment." (*Kojababian v. Genuine Home Loans, Inc.*, *supra*, 174 Cal.App.4th at p. 416; see *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 ["Unless the moving party meets its burden, summary judgment cannot be ordered, even if the opposing party does not respond sufficiently or at all."].)

    a. *Causes of action against all defendants*

        i. <u>Negligence</u>

"A plaintiff in a negligence suit must demonstrate ' "a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." ' [Citation.]" (*Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077, 1083.) " 'Generally, one owes a duty of ordinary care not to cause an unreasonable risk of harm to others. [Citations.]" (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 747.) "The general standard of care applicable to negligence is ' "that of a reasonably prudent person under like circumstances." ' [citation], which constitutes an 'objective reasonable person standard' [citation]." (*People v. Superior Court* (*Sokolich*) (2016) 248 Cal.App.4th 434, 447; see *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 721 [applicable standard of care by which law enforcement officer's conduct must be measured in context of pulling over motorist into center median rather than onto right shoulder is that of a reasonably prudent person under like circumstances].) " 'Breach is the failure to meet the

standard of care.'  [Citation.]" (*Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 288.)

Defendants made prima facie showings at least one element of this cause of action could not be established.

Giorgio, a sheriff's deputy, was on routine patrol when he saw Emmerick on the side of a road filling a large tank on a trailer hitched to his pickup truck with water from a District-owned hydrant.  Giorgio decided to stop and ask Emmerick if he had a permit because the latter's truck did not appear to belong to a government agency, contractor, or water company.  Giorgio slowly drove his patrol vehicle on the rough dirt terrain "to avoid damage to the vehicle and creating unnecessary dust" and parked at least 15 yards behind Emmerick's truck so both Emmerick and the truck were within his sight.  Giorgio approached on foot.  When he was about 10 to 15 feet away, Emmerick met him, was belligerent, and stated Giorgio "had no authority to talk to him."  Giorgio asked Emmerick if he had a permit to use the hydrant.  Emmerick was initially uncooperative but eventually displayed his District-issued permit.  Giorgio contacted another deputy, allowed Emmerick to continue using the hydrant, and—upon Emmerick's request—wrote down his name and badge number.  Giorgio "thanked [Emmerick]," "told him to have a nice day," and returned to his vehicle.  He drove slowly away "because he was still on the rough dirt terrain."  Giorgio's vehicle never came within 10 yards of Emmerick. Throughout the encounter, which lasted between 10 and 20 minutes, Giorgio did not (1) raise his voice; (2) threaten Emmerick verbally or physically; (3) touch Emmerick aside from providing his name and badge number; or (4) instruct Emmerick that he could not leave the scene.  These facts, which were uncontroverted, sufficiently demonstrated Giorgio objectively acted with reasonable care under the circumstances.

Ernst, a District director, was driving in and around Inyokern with his dog and V.C. when he passed Emmerick pumping water out of a District-owned hydrant and into a large tank on a trailer hitched to his truck.  Ernst did not recognize Emmerick.  He made

15.

a U-turn and stopped his car about 15 feet behind Emmerick's trailer. From inside his vehicle, Ernst asked Emmerick, " 'Are you authorized to get water out of that hydrant?' " (Boldface omitted.) Emmerick suddenly became incensed and called Ernst a " 'mother fucking cock sucker.' " (Boldface omitted.) Ernst told V.C., " '[T]hey don't pay me enough to deal with this.' " (Boldface omitted.) He then drove away. During the encounter, Ernst did not (1) drive in a threatening, hazardous, or reckless manner around Emmerick; (2) exit his vehicle; (3) touch or otherwise come into close contact with Emmerick; (4) threaten, assault, or batter Emmerick; (5) allow his dog to leave his vehicle; or (6) intend to harm Emmerick. Later, in a response to a request for admission propounded by Ernst and District, Emmerick "admits that Ernst never '. . . prohibited [him from] obtaining water' " (boldface omitted) and "admits that '[his] allegations are not of preclusion of access to water' " (boldface omitted). These facts, which were uncontroverted, sufficiently demonstrated Ernst objectively acted with reasonable care under the circumstances.[5]

### ii. Negligent infliction of emotional distress

"Negligent infliction of emotional distress ' "is not an independent tort, but the tort of negligence," ' to which ' "traditional elements of duty, breach of duty, causation, and damages apply." ' [Citation.]" (*Downey v. City of Riverside* (2024) 16 Cal.5th 539, 547, italics omitted.) "[B]reach of duty is predicated not on the foreseeability of emotional distress to the plaintiff but on the level of outrage to which the defendant's conduct has risen. In this regard, . . . '[c]onduct to be outrageous must be so extreme as to exceed all

---

**5** Under the "SECOND CAUSE OF ACTION for NEGLIGENCE" heading of the operative complaint, Emmerick cited article I, section 7 of the California Constitution as "Guarantee[ing] [his] right to equal protection of the laws" and prohibiting "Discriminatory Deprivations from Equality." (See Cal. Const., art. I, § 7, subd. (a) ["A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . . ."].) Defendants made prima facie showings Emmerick was not subjected to unlawful discrimination. (See at pp. 18–22, *post.*)

bounds of that usually tolerated in a civilized community.' [Citation.]" (*Bro v. Glaser* (1994) 22 Cal.App.4th 1398, 1438–1439.) Furthermore, "to recover damages for emotional distress on a claim of negligence where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious.' [Citations.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1377.) " ' "[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." [Citation.]' [Citation.]" (*Id.* at pp. 1377–1378.)

Defendants made prima facie showings at least one element of this cause of action could not be established. As discussed, uncontroverted facts sufficiently demonstrated Giorgio and Ernst objectively acted with reasonable care under the circumstances. These facts also sufficiently demonstrated: (1) neither Giorgio nor Ernst engaged in outrageous conduct; and (2) the circumstances would not cause the kind of stress that a reasonable person would ordinarily be unable to adequately manage. (See *ante*, at pp. 15–16.)

### iii. Dangerous condition of public property (Gov. Code, § 835)

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Gov. Code, § 835.) " 'An initial and essential element . . . is proof a dangerous condition existed.' [Citation.]" (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 109.)

17.

Defendants made prima facie showings at least one element of this cause of action could not be established. The location of the encounter was described by Giorgio as simply "an open dirt lot." This and other uncontroverted facts sufficiently demonstrated: (1) there was no "physical deficiency in the property itself" (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347, italics omitted), given Emmerick had little to no difficulty accessing the hydrant; and (2) Giorgio's and Ernst's acts at the scene did not create a dangerous condition of public property. (See *ante*, at pp. 15–16.) Absent evidence of such a defect, premises liability cannot be shown.

### iv. Violation of the ADA

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132.) "To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." (*Weinreich v. Los Angeles County Metropolitan Transportation Authority* (9th Cir. 1997) 114 F.3d 976, 978, italics omitted.)

Defendants made prima facie showings at least one element of this cause of action could not be established. District, a public entity that provides water services and utilities to Inyokern residents, passed an ordinance that authorized members of the public to obtain a permit to procure " 'bulk water' from fire hydrants within [District]." (Boldface omitted.) In or around late 2017, Emmerick obtained this permit. District was not aware and had no reason to believe Emmerick was disabled and did not treat him "any differently than any other member of the public with regard to access to water, or in any other regard." (Boldface omitted.) Giorgio and Ernst—in their respective capacities as

18.

sheriff's deputy and District director—each decided to speak with Emmerick in October 2018 to verify whether he had authorization to pump water from a District-owned hydrant. (See *ante*, at pp. 15–16.) Giorgio was not aware of Emmerick's purported disability. He noticed Emmerick "had some trouble speaking" but "did not treat [Emmerick] any differently than any other member of the public due to [Emmerick]'s difficulty speaking." Ernst, whose interaction with Emmerick was fleeting, asked a single question, was rebuffed, and left shortly thereafter. He did not "take any discriminatory action" based on Emmerick's purported disability. Ultimately, Emmerick continued to use the hydrant after each encounter. In addition, "[a]t no point in time has [Emmerick] ever been prohibited or stopped from obtaining water from [District's] water system during a time [when] he had a valid Bulk Water Permit." (Boldface omitted.) Defendants sufficiently demonstrated: (1) Emmerick was not excluded from participation in or denied the benefits of a public entity's services, programs, or activities; (2) Emmerick was not discriminated against by a public entity; and (3) there was no exclusion, denial of benefits, or discrimination due to Emmerick's purported disability.

     v.  <u>Denial of full and equal access to the benefits of and/or unlawful discrimination under a program or activity conducted by, funded directly by, or receiving financial assistance from the state or discrimination thereunder (Gov. Code, § 11135)</u>

"No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." (Gov. Code, § 11135, subd. (a).) "The protected bases used in this section include a perception that a person has any of those characteristics or that the person is associated with a person who has, or is perceived to

19.

have, any of those characteristics." (*Id.*, subd. (d).)  Government Code section 11135 is "coextensive with the ADA because it incorporates the protections and prohibitions of the ADA and its implementing regulations." (*Bassilios v. City of Torrance* (C.D.Cal. 2015) 166 F.Supp.3d 1061, 1084; see Gov. Code, § 11135, subd. (b) ["With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal [ADA] (42 U.S.C. [§] 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions."].)

For the same reasons articulated concerning Emmerick's ADA claim, defendants made prima facie showings at least one element of Emmerick's Government Code section 11135 claim could not be established.  (See *ante*, at pp. 18–19.)

### vi.   Violation of Unruh Civil Rights Act

"All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).)  " 'A plaintiff can recover under the [Unruh Civil Rights Act] on two alternate theories:  (1) a violation of the ADA [citation]; or (2) denial of access to a business establishment based on intentional discrimination.' [Citation.]" (*Martinez v. Cot'n Wash, Inc.* (2022) 81 Cal.App.5th 1026, 1035.)  "[A]bsent an ADA violation, the Unruh Civil Rights Act requires allegations supporting ' "willful, affirmative misconduct" ' [citation] with the specific intent 'to accomplish discrimination on the basis of [a protected trait].' [Citation.]" (*Id.* at p. 1036.)  Moreover, the focus of

the statute "is the conduct of private business establishments." (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 675, italics omitted.)

As discussed, defendants made prima facie showings at least one element of the ADA claim, could not be established. Uncontroverted facts also sufficiently demonstrated: (1) neither Giorgio nor Ernst engaged in willful, affirmative misconduct; (2) Giorgio's and Ernst's conduct was not motivated by Emmerick's purported disability; and (3) Giorgio and Ernst acted in their respective capacities as sheriff's deputy and District director. (See *ante*, at pp. 15–16, 18–19.)

### vii. Violation of Ralph Civil Rights Act

"All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of [the Unruh Civil Rights Act], or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b)(1).) "Under the Ralph Act, a plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or their property, and a motivating reason for doing so was a prohibited discriminatory motive . . . ." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1291.)

Defendants made prima facie showings at least one element of this cause of action could not be established. Uncontroverted facts sufficiently demonstrated: (1) neither Giorgio nor Ernst threatened or committed violent acts against Emmerick or his property; and (2) Giorgio's and Ernst's conduct was not motivated by Emmerick's purported disability. (See *ante*, at pp. 15–16, 18–19.)

### viii. Violation of Tom Bane Civil Rights Act

"The Bane Act provides for liability for the interference or attempted interference with a person's state or federal constitutional rights 'by threat, intimidation, or coercion.' " (*Wiley v. Kern High School Dist.* (2024) 107 Cal.App.5th 765, 774, quoting

21.

Civ. Code, § 52.1, subd. (b).)  "To plead a cause of action under the Bane Act, the plaintiff must show '(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion.' [Citation.]" (*Wiley v. Kern High School Dist.*, *supra*, at p. 774.)  " '[T]o state a cause of action under [Civil Code] section 52.1 there must first be violence or intimidation by threat of violence.  Second, the violence or threatened violence must be due to plaintiff's membership in one of the specified classifications set forth in [the Ralph Civil Rights Act] or a group similarly protected by constitution or statute from hate crimes.' [Citation.]" (*Gabrielle A. v. County of Orange*, *supra*, 10 Cal.App.5th at p. 1290.)

Defendants made prima facie showings at least one element of this cause of action could not be established.  Uncontroverted facts sufficiently demonstrated:  (1) neither Giorgio nor Ernst engaged in violence or intimidation by threat of violence; and (2) Giorgio's and Ernst's conduct was not motivated by Emmerick's purported disability.  (See *ante*, at pp. 15–16, 18–19.)

    b.  *Causes of action against County and Giorgio*

        i.  <u>Illegal search and seizure</u>

"The Fourth Amendment provides '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . .' [Citation.]  This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and is applicable to the states.  [Citation.]" (*People v. Camacho* (2000) 23 Cal.4th 824, 829–830.)  " 'In determining whether there was a violation of the proscription against unreasonable searches contained in the Fourth Amendment of the United States Constitution, we must decide whether the person has "exhibited a subjective expectation of privacy" which is objectively reasonable and, if so, whether an unreasonable governmental intrusion has violated that expectation.' [Citations.]" (*People v. Eckstrom* (1986) 187 Cal.App.3d 323, 333.)  For instance,

" ' "[t]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. . . ." ' [Citation.]" (*Littlefield v. County of Humboldt* (2013) 218 Cal.App.4th 243, 253.) "This is so because '[t]here is no societal interest in protecting the privacy of those activities . . . that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. . . . For these reasons, the asserted expectation of privacy in open fields is not an expectation that "society recognizes as reasonable." ' [Citation.]" (*People v. Eckstrom*, *supra*, at p. 333; see *People v. Lucatero* (2008) 166 Cal.App.4th 1110, 1118 [" 'What is observable by the public is observable, without a warrant, by the Government . . . as well.' "].)

Defendants made a prima facie showing the October 2018 encounter did not implicate the Fourth Amendment. Uncontroverted facts sufficiently demonstrated Emmerick—in plain view of sheriff's deputy Giorgio—was in an "open dirt lot" on the side of a road using a District-owned hydrant to fill a large tank on a trailer hitched to his truck. Giorgio sensibly decided to speak with Emmerick because (1) the hydrant being utilized was "not generally available for public use without special permission"; and (2) Emmerick's truck did not appear to belong to a government agency, contractor, or water company. (See *ante*, at pp. 15–16, 17–18.) Furthermore, the terms of Emmerick's permit expressly advised he was obligated to comply with a law enforcement officer's request to inspect said permit. (Cf. *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1252 ["By accepting a search and seizure condition, a probationer is giving advance consent to search."].)

### ii. Fraud

" 'To avoid summary adjudication of [a] fraud claim, [a plaintiff is] required to produce evidence of (1) a misrepresentation, (2) knowledge of falsity (or "scienter"), (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance, and (5) resulting

damage. [Citation.]' [Citation.]" (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455, italics omitted.)

Defendants made a prima facie showing at least one element of this cause of action could not be established. Giorgio was on routine patrol when he came across Emmerick pumping water out of a District-owned hydrant. Giorgio asked Emmerick "whether he had a contract or some other permission to use the hydrant" and corrected Emmerick's mistaken belief a law enforcement officer "had no authority to conduct investigations unless he was dispatched." After Giorgio examined Emmerick's permit and consulted another deputy, Emmerick "was permitted to continue using the hydrant." Upon Emmerick's request, Giorgio wrote down his name and badge number. (See *ante*, at p. 15.) Defendants sufficiently demonstrated Giorgio did not make any misrepresentations "with the knowledge that it is or may be untrue . . . ." (*Seeger v. Odell* (1941) 18 Cal.2d 409, 414.)

### iii. False arrest

" 'The tort of false imprisonment[6] is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.' [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1123.) "Restraint may be effectuated by means of physical force [citation], threat of force or of arrest [citation], confinement by physical barriers [citation], or by means of any other form of unreasonable duress. [Citation.]" (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715; see *Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 1002 ["Fraud or deceit or any unreasonable duress are alternative methods of accomplishing the tort."].)

Defendants made a prima facie showing at least one element of this cause of action could not be established. Uncontroverted facts sufficiently demonstrated Giorgio

---

**6** " ' "[F]alse arrest" and "false imprisonment" are not separate torts. False arrest is but one way of committing a false imprisonment . . . .' [Citation.]" (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 752, fn. 3.)

neither intended to confine Emmerick nor deprived him of his freedom of movement by means of physical force, threats of force, threats of arrest, physical barriers, or other forms of unreasonable duress.  (See *ante*, at p. 15.)

    c.  *Cause of action against County and District – Government Code section 815.6*

"Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.)  "[T]here are three elements to a cause of action under Government Code section 815.6."  (*Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983, 991.) "First and foremost, application of [Government Code] section 815.6 requires that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken."  (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498, italics omitted.)  "Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered."  (*Id.* at p. 499.)  "The third and final requirement is that the breach of the duty must have been a proximate cause of the plaintiff's injury."  (*Guzman v. County of Monterey*, *supra*, at p. 991.)

In view of uncontroverted facts (see *ante*, at p. 15), defendants sufficiently demonstrated Giorgio "made the discretionary decision to undertake [an] investigation" (*Conway v. County of Tuolumne* (2014) 231 Cal.App.4th 1005, 1015).  (See *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1437 [" 'Generally speaking, a discretionary act is one which requires the exercise of judgment or choice.' "], overruled in part on another ground by *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 815, fn. 8.)  "[D]iscretionary or permissive action by a public employee

cannot result in liability under [Government Code] section 815.6." (*Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776, 800.)

  d.  *Exemplary damages*

  The operative complaint asserted a claim for exemplary damages. "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).) " ' "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called wil[l]ful or wanton." [Citation.]' [Citation.]" (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 712, italics omitted.)

  As discussed, defendants made prima facie showings as to all Emmerick's causes of action. (See *ante*, at pp. 13–26.) Uncontroverted facts also sufficiently demonstrated neither Giorgio nor Ernst acted maliciously, fraudulently, or recklessly. (See *ante*, at pp. 15–16, 18–19.) Thus, exemplary damages were unwarranted.

  e.  *Conclusion*

  Defendants met their initial burden to show none of the causes of action raised by Emmerick could be established. Accordingly, we conclude the superior court did not abuse its discretion when it granted the summary judgment motions.[7]

---

  [7] Given our disposition, we need not address other grounds in favor of summary judgment.

f. *Emmerick's arguments on appeal*

On appeal, Emmerick appears to contend we must reverse the orders granting summary judgment in light of "the mandated requirement that the facts are to be reviewed in the light most favorable to [the party opposing summary judgment]." He also contends "the trial Court's reliance on inadmissible evidence and the erroneous interpretation of the law in granting summary judgment was error" and "proper application of the law would prohibit the granting of summary judgment." We point out Emmerick does not address his failure to comply with section 437c, subdivision (b)(3)'s separate statement requirement.

Regarding the first argument, we recognize where a decision to grant summary judgment is reviewed de novo, evidence and inferences reasonably drawn therefrom are viewed in the light most favorable to the opposing party. (*See's Candy Shops, Inc. v. Superior Court*, *supra*, 210 Cal.App.4th at p. 900.) Here, however, we employed an abuse-of-discretion standard of review because Emmerick did not file a separate statement pursuant to section 437c, subdivision (b)(3) and the superior court's rulings highlighted the absence of admissible facts or evidence rebutting defendants' prima facie showings for summary judgment. (See *Parkview*, *supra*, 133 Cal.App.4th at p. 1208; *Blackman*, *supra*, 193 Cal.App.3d at p. 893.)

Regarding the second argument, we disagree with Emmerick's assertion the superior court's rulings were based on inadmissible evidence and improper application of the law. In support of their summary judgment motions, defendants filed separate statements that set forth material facts supported by evidence. (See § 437c, subd. (b)(1).) So long as defendants made prima facie showings for summary judgment, the court had the discretion to grant their motions based on Emmerick's failure to comply with section 437c, subdivision (b)(3). (See *Thatcher v. Lucky Stores, Inc.*, *supra*, 79 Cal.App.4th at p. 1086.) Our review validates the propriety of the rulings.

**DISPOSITION**

The judgments of the superior court are affirmed. Costs on appeal are awarded to defendants and respondents County of Kern, Kevin Giorgio, Walter Ernst, and Inyokern Community Service District.


DETJEN, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.